**In re N.J.B.**

*Jennifer Grimes,* for BCCYS.
*Wendie Ziegler,* guardian ad litem.
*John Grenko,* for mother.

KELLER, *J.*, January 11, 2011—This appeal stems from the involuntary termination of the parental rights of R.W. (hereinafter, "mother"), to the above referenced child. Involuntary termination hearings were held on November 1, 2010 and November 10, 2010. At that hearing, mother was represented by Gary Fronheiser, Esquire. At the conclusion of the hearing this court took all of the evidence and testimony under advisement and deferred decision on the petition to terminate parental rights. After much consideration this court found that the facts alleged in Children and Youth Services' petition were established by clear and convincing evidence and therefore forever terminated mother's rights to the child N.B. by order of court dated November 15, 2010. Mother timely filed a notice of appeal to said order on December 10, 2010. Further, it should be noted that father's parental rights were also terminated by order of November 15, 2010; he has not filed an appeal. Mother alleges the following acts of error:

1. The honorable court erred by terminating appellant's parental rights.

2. Petitioners have not established by clear and convincing evidence that appellant's parental rights should be terminated under 23 Pa.C.S.A. Section 2511 (a)(1), (2), (5), or (8).

3. The evidence presented by petitioners was insufficient to support the honorable court's decision to terminate appellant's parental rights.

4. The lower court erred by not allowing appellant to have expanded visits and expand her relationship with her child, specifically by changing the primary goal of the case from return to parent or guardian to adoption by court order dated March 3, 2010, and Berks County Children and Youth Services (BCCYS) thereby did not increase visits, and BCCYS subsequently filed a petition on April 21, 2010 to terminate appellant's parental rights.

5. The lower court erred by continuing from August 18, 2010 to the termination hearing on November 1, 2010, a hearing on appellant's challenge to recommendation of hearing master and request for court re-hearing to change case goal and increase visitation which was filed on June 22, 2010.

6. The lower court erred by not ruling as per the court order dated August 18, 2010 on Appellant's challenge to Recommendation of Hearing Master and Request For court Re-Hearing To Change Case Goal and Increase Visitation following the hearing on November 1, 2010.

## DISCUSSION

Terminating the parental rights of the natural parent to his or her child carries with it a constitutional significance because of the importance of the right involved. *T.J.B. v. E.C.*, 652 A.2d 936, 943 (Pa. Super. 1995) (citing *In re J.W.*, 578 A.2d 952, 957 (1990). Consequently, clear and convincing evidence is necessary to prove the statutory

grounds necessary to terminate parental rights. *Id.* The Superior Court apply set forth the standard of review in *In re T.D.*, 949 A.2d 910, 914-15 (Pa. Super. 2008) as follows:

Our standard of review regarding orders terminating parental rights is as follows:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence. *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the burden is upon CYS to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid. *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

We have previously stated:

The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to

a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination. *Id.*

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S. § 2511, which provides in pertinent part as follows:

Grounds for involuntary termination

(a) General rule.-The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

(b) Other considerations.-The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the

control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition. 23 Pa.C.S. §2511.

The court applies a two-part test for termination of parental rights. In *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007), The Superior Court has stated:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

We will begin by applying the two-prong test to the case at bar. First we note that the child has been removed from the care of mother since January 2009. On January 2, 2009 mother gave birth to N.J.B. Due to her mental health and drug and alcohol abuse, as well as the fact that

mother had her parental rights involuntarily terminated on three children in March 2008, mother signed a 30-day voluntary placement agreement. Mother has failed to remedy the conditions which led to the placement of the child and continued services will not remedy those conditions. Despite the best efforts of both the agency and mother, mother simply cannot provide a stable and healthy environment for the child. She suffers from substance abuse addictions, has difficulty maintaining housing, subsists off of welfare case benefits and food stamps, and has ongoing domestic violence issues. The testimony from the involuntary termination hearings lends credence to this court's decision that mother has not remedied the situation which necessitated the placement of child; therefore, we believe that the first prong of the test has been satisfied and we will now move on to the second prong which asks this court to consider the developmental, physical and emotional needs and welfare of the children pursuant to 23 Pa.C.S. §2511.

After reviewing the testimony, and considering the exhibits this court has no doubt that termination of parental rights will serve the best interests of the child. To date, mother has not remedied the situation which necessitated the involvement of Children and Youth Services. Caseworker Amy Schermerhorn testified to the following:

Ms. Schermerhorn: Well, I think it's important as we just discussed the history surrounding this family. The case currently has been open with the Agency since July

of 2003 for issues surrounding parenting, inappropriate parenting skills and overall supervision of the kids, physical, emotional abuse of the children by mother, parental substance abuse, mental health issues, lack of stable housing and income. So you know we have been involved continuously through that time, however, the Agency has actually been involved with the family and has known the family since 1997.

Mother has eight (8) children total and I do believe all of the children that she's had were in care throughout the time they were children. She has children now who are adults, they aged out of the system.

Her parental rights were terminated in court by the Honorable Elizabeth Ehrlich in March of 2008;

\*\*\*

Yes, in June of 2008, mother had noticed that she was pregnant and, by her own admission, pretty much denied at that time that she was pregnant.

In the beginning of August of 2008, she moved into a women's drug and alcohol facility in Lancaster County. She resided there until November of 2008 where she left against the advice of the program director.

She eventually made her way back to the Reading area and lived in Berks County Women in Crisis housing and she gave birth on January 2, 2009, and at that point she signed a thirty day voluntary placement agreement

for [child] because of having her parental rights involuntary (sic) terminated on three of her other kids in March of 2008 and because of the issues that the Agency still had with her drug and alcohol mental health issues. (Notes of Testimony (N.T.), 11/1/10, at 50-1).

Mother continues to need support and is unable to care for the child alone. Her housing is partially paid for by Service Access and Management (S.A.M.), her income remains food stamps and cash assistance, she is still in need of domestic violence treatment, drug and alcohol treatment, although mother has tested negative for all substances since her child has been born, and still needs mental health treatment. We do note that mother has complied in services, but is just unable to care for the child despite her very best efforts. Moreover, in regards to mother's bond with the child, Dr. Mildred Gordon testified to the following:

Dr. Gordon: The first question that was asked was what bond, if any, exists between the biological mother, [R.W.], and [child] and I responded by stating that this was a rather complex situation, [child] is a child who is very hypersensitive and he was very distraught and uncomfortable and could not really be consoled. His attachment, his attachment issues are really affected by the type of child he is and I summarized his issues because I think in this particular case, they are somewhat different than many of the other cases we have done. This child's temperamental style and this

child himself is a major factor. He's extremely reluctant and extremely anxious.

In addition, the tensions that I observed between the biological mother and foster mother probably play a major role in the reaction of the child. So, you have several important factors that play a role, the child himself -- I do not know and I don't think anyone knows exactly what all the factors are in [child's] life -- while he was in utero, mother was using and so the impact of her drug use on him is probably an issue that we may never know...I was also asked the question about severing the bonds between [child] and [mother] and I think the answer is that the bond is not there, his basic attachment is clearly to his foster family...One might say, well, if you gave him to [mother] it would get better. I don't believe that's the case, I think this child, as I said, is at risk and needs to really stay where he is for his needs, not because of her, but because of the way he is...I said there needs to be acknowledgement and recognition of where [child] is emotionally and developmentally. That's the critical issue. One could argue back and forth concerning [mother's] credibility, her level of functioning and sobriety, but at this point, it's almost not the major issue. The critical factor is that this is a sensitive little boy whose bond, attachment and link to a healthy future are tied to the family he's with. He's been with them since day one, his temperament is really critical.

Again, if I had a camera, his ability to -- his ability to

independently function was based on his security, so that when he was in with his foster parents, he could interact, he could move away, he could interact with me. He couldn't do that otherwise. (N.T., 11/1/10 at 9-16).

It is clear that mother loves this child, as well as her other seven (7) children, however she is simply not able to care for him. This court has no question that returning the child to mother's care, and not terminating her parental rights, would be detrimental to the child, his health, and his well-being.

Mother has been involved with Children and Youth Services since 1997 for her other children and most recently from 2006 to 2008 when she had her parental rights terminated to three (3) of her children, and thereafter with the child at issue in this case. To date, mother has been unable to provide proper parental care for the child.

The child is now in a stable and loving home. To allow mother to parent the child is not in his best interests. We note that the trial court, as finder of fact, is the sole deterrminer of credibility of witnesses. *In re Adoption of B.G.S.*, 614 A.2d 1161,1168 (Pa. Super. 1992). This court has listened to the testimony presented by Children and Youth, as well as the testimony of mother, and has considered all of the exhibits. Again, while we believe that mother loves her child, we cannot allow her to parent him, when she is at times unable to care for herself and other times puts the needs of her self and her relationships

with her husband and paramours above the needs of her minor child. While the agency has tried to help mother, she has been unable to show the progression that necessitates the return of the child to her care. Although before filing a petition for termination of parental rights, the Commonwealth is required to make reasonable efforts to promote reunification of parent and child, the Commonwealth does not have an obligation to make such efforts indefinitely. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1276 (Pa. Super. 2003). The Commonwealth has an interest not only in family reunification but also in each child's right to a stable, safe, and healthy environment, and the two interests must both be considered. *Id.* A parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the parent's failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment. *In Interest of Lilley*, 719 A.2d 327 (Pa. Super. 1998). We believe that mother is unable to parent the child and that involuntarily terminating her parental rights is in the child's best interests. Our courts have repeatedly stated that being a parent is more than a passive state of mind; it requires constant affirmative demonstration of parental devotion. *In re Adoption of M.J.H.*, 501 A.2d 648, 652 (Pa. Super. 1985).

In her fourth issue on appeal, mother argues that this court erred by not allowing expanded visits and by changing the primary goal of the case from return to

parent to adoption. We disagree. The testimony presented clearly indicates that what is in the best interests of the child is for the child to be adopted. As Dr. Gordon testified to, increased visits would not have helped the situation. Mother did not present as a viable parent for the child. The child is attached to his foster family and because of his unique personality, stability is particularly important for him. This issue lacks merit.

In mother's fifth issue she asserts that this court erred by continuing the hearing on mother's request to increase visitation and change the primary goal back to return to parent. However, the record reflects that the continuance was agreed to by the parties. This court's order of August 18, 2010 specifically states "all parties agreeing that a continuance is necessary in this matter..." (emphasis added). This issue was waived and lacks merit.

Finally, mother argues that this court erred by not specifically denying the petition to increase visitation and change the primary goal back to return to parent at the termination hearing on November 1, 2010. However, by terminating mother's parental rights, this request was effectively denied. An additional order was unnecessary. This issue too lacks merit.

Thus, for all of the reasons set forth above, and because we believe that mother's issues do not contain any merit, and that the needs of the minor child would be best served by the involuntary termination of mother's parental rights, we respectfully request that mother's appeal be denied.