J-S45013-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: D.N.M., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.D., MOTHER, | |
| Appellant | No. 237 EDA 2014 |

Appeal from the Decree January 8, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000711-2013, CP-51-DP-0001380-2011

| | |
|---|---|
| IN THE INTEREST OF: S.E.J., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.D., MOTHER, | |
| Appellant | No. 240 EDA 2014 |

Appeal from the Decree January 8, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000710-2013, CP-51-DP-0001379-2011

BEFORE:  BOWES, WECHT, and FITZGERALD,[*] JJ.

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 08, 2014**

D.D., ("Mother") appeals from the order entered January 8, 2014, whereby the trial court involuntarily terminated her parental rights to two of

_____

[*]  Former Justice specially assigned to the Superior Court.

her children, D.N.M. and S.E.J. and changed the children's permanency goals

to adoption.[1]  After careful review, we affirm.

The trial court delineated the salient facts as follows.

On June 14, 2011, the Department of Human Services (DHS) received a General Protective Services (GPS) report alleging that the Mother of D.N.M. and S.E.J., D.D., was hospitalized for mental health treatment pursuant to a 302 and that the children were with maternal grandmother.  The report further alleged that [Mother] abused drugs and hit the children. The report was substantiated.

On June 14, 2011, the children's maternal grandmother, K.C. signed a Safety Plan whereby she would care for the children in her home; however, DHS was subsequently informed that K.C. was caring for [Mother] and [Mother's] two children in her home and would not be able to continue caring for S.E.J. and D.N.M.  On June 30, 2011, Mother failed to attend an intake at Interim House, a residential substance abuse treatment program.

On July 7, 2011, DHS obtained an Order of Protective Custody (OPC) and placed S.E.J. and D.N.M. with their maternal aunt, K.S.  A shelter care hearing was held on July 8, 2011[,] at which time the OPC was lifted, and the temporary commitment to DHS was ordered to stand.  The children were adjudicated dependent on July 13, 2011[,] and committed to DHS.  Mother was permitted to have supervised visits at the agency and was referred to the Clinical Evaluation Unit (CEU) for a dual diagnosis assessment and screen.  Mother was also referred to the Achieving Reunification Center (ARC).

At the permanency review hearing on October 6, 2011, the [c]ourt found that Mother was participating in mental health and drug and alcohol treatment at Gaudenzia House, rendering

_____

[1] The instant termination proceeding also addressed the parental rights of the children's respective fathers, both of whom had their parental rights terminated.  Both fathers have filed separate appeals, which are before this same panel and are addressed separately.

negative drug screens twice per week and taking her medication as prescribed. Mother was permitted to have twice weekly supervised visits and was referred to CEU for monitoring. Mother was found to be in full compliance with the permanency plan.

At the permanency review hearing on January 4, 2012, a CEU Report of non-compliance was issued as to Mother, and Mother was referred to the CEU for a dual diagnosis assessment, screen and monitoring. At the end of 2011, Mother was unsuccessfully discharged from her program at Washington House Gaudenzia for using someone else's urine for her drug screen. On March 28, 2012, it was reported that Mother had resumed outpatient drug treatment at Gaudenzia after she was reassessed by the CEU, and the [c]ourt ordered that if Mother's drug screen was negative, visits with the children could be modified to unsupervised; however, Mother failed to maintain sobriety. On July 27, 2012, it was reported that Mother was attending outpatient drug treatment at Gaudenzia, had completed [a] parenting [program] and was in moderate compliance with the permanency plan. At the permanency hearing on October 26, 2012, a [r]eport of non-compliance from the CEU was issued as to Mother, and Mother was referred to CEU for an assessment and screen and three random drug screens prior to the next court date. CEU was ordered to explore alternative drug treatment programs for Mother. At the permanency review hearing on January 4, 2013, it was reported that Mother only attended three of the eight visits afforded her, and a CEU [r]eport of [n]on-[c]ompliance as to Mother was submitted to the [c]ourt.

At the permanency reviewing [sic] hearing held by [the court] on March 20, 2013, the [c]ourt found that Mother was non-compliant with drug and alcohol treatment and ordered her to have five random drug screens prior to the next court date. The [c]ourt noted that supervised visits with Mother were problematic and ordered that if Mother tested positive on any two of the five drug screens or refused any two, visits were to be suspended. Mother's visits were subsequently suspended due to positive drug screens.

On January 8, 2014, [the court] found clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5) & (8) and further found that

pursuant to 23 Pa.C.S.A. § 2511(b), adoption would be in the best interest of S.E.J. and D.N.M.

Trial Court Opinion, 3/11/14, at 2-4 (internal citations omitted).

This timely appeal ensued. Mother complied with Pa.R.A.P. 1925(a)(2)(i), and filed a Rule 1925(b) concise statement. The court authored its decision and the matter is now ready for this Court's review. Mother raises four issues for our consideration.

1.  Whether the trial court committed reversible error, when it involuntarily terminated Mother's parental rights where such determination was not supported by clear and convincing evidence under the adoption act, 23 Pa.C.S.A. §2511(a)(1), (2), (5) and (8)?

2. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of the child as required by the adoption act, 23 Pa.C.S.A. §2511(b)?

3. Whether, [sic] the trial court erred because the evidence was overwhelming and undisputed that Mother, [sic] demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with her children?

4. Whether, [sic] the trial court erred when it changed the goal to adoption when there did not exist clear and convincing evidence to do so?

Appellant's brief at 4.

We begin by setting forth our settled standard of review regarding an order terminating parental rights:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the

- 4 -

trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa.Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa.Super. 2005)).

"In termination cases, the burden is upon [the agency] to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, *supra* at 276. We have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *Id*. (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa.Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004). "[I]f competent evidence supports the court's findings, we will affirm even if the record could also support the opposite result." *In re N.C.*, 763 A.2d 913, 917 (Pa.Super. 2000).

Requests to terminate a biological parent's parental rights are governed by 23 Pa.C.S. § 2511, which provides in relevant part:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonable available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best service the needs and welfare of the child.

. . . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . . .

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

Mother first contends that DHS did not meet its burden by clear and convincing evidence that her parental rights should be terminated. She maintains that she had "substantially completed or was working towards the completion of her [family service plan] by the time of the filing of the termination petition." Specifically, Mother asserts that DHS did not establish that she "refused or failed to perform her parental duties[.]" Mother's brief at 10-11.

Mother notes that her family service plan ("FSP") required her to participate in drug and alcohol treatment, a mental health and parenting program, visit her children, and obtain suitable housing. According to Mother, she testified that she was presently enrolled in a drug treatment program and was in mental health treatment. Mother highlights that DHS social worker, Akilah Owens, averred that Mother successfully completed two parenting programs. In addition, Mother submits that she provided proof of housing by introducing a lease of a three-bedroom apartment into

evidence. Mother also points out that an additional social worker, Zakiah Snead, remarked that she made the majority of visits with her children, and was engaged with them during those visits.

DHS responds that under any of the subsections, § 2511(a)(1), (2), (5), and (8), it met its burden. In its view, "the evidence establishes a long, settled record of [Mother's] failure and unwillingness to make sufficient efforts to address and resolve her drug and alcohol and mental health deficiencies to enable her to occupy a parental role." Appellee's brief at 20. DHS asserts that Mother did not work toward substantial completion of her FSP, noting that she regularly tested positive for drugs and was twice unsuccessfully discharged from drug treatment. It points out that Mother's visitation rights were suspended with her children due to her drug addiction and that she attempted to use another person's urine to avoid a positive drug screen.

Further, DHS submits that Mother did not complete mental health treatment and that, despite completion of parenting classes, was "unable to implement the skills taught." Appellee's brief at 21. It also cites Mother's lack of engagement during the visits. DHS further provides that Mother provided no credible support for her own self-serving testimony that she was enrolled in drug and alcohol or mental health treatment. Indeed, it accurately recognizes that the court below found her testimony lacking credulity and rejected that she had obtained suitable housing.

We agree with DHS that the record belies Mother's claim that she satisfied or was working toward completion of her FSP. The court below rejected much of Mother's testimony as incredible. Mother repeatedly failed to successfully complete drug treatment, going so far as to procure another person's urine to avoid detection, and consistently tested positive for drugs. *See* N.T., 1/8/14, at 21-22, 31, 34. Absent Mother's own incredible testimony, there was no evidence that she obtained proper housing. Here, the record supports that Mother has been unable for a period of three years to overcome her drug addiction or alleviate her mental health problems. Accordingly, Mother's first issue is without merit.

Mother next contends that the trial court erred in failing to give primary consideration to the effect of the termination on the children's developmental, physical, and emotional needs. The substance of Mother's argument is that "DHS presented minimal evidence as to whether the bond between Mother and her children would result in any detrimental harm to the children." Mother's brief at 14.

DHS rejoins that it presented testimony that Mother and children "lacked mutual comfort, love, security and support." Appellee's brief at 29. It posits that when Mother did visit with the children, the overall quality of the visits was poor. DHS maintains that the children did not wish to see Mother and "would get hysterical at the prospect of going for a visit." *Id*. According to DHS, Mother only attended approximately forty-five percent of

her scheduled visits and frequently was "high" on drugs. It points out that Ms. Owens and Ms. Snead proffered that termination of Mother's rights would not have a negative effect on the children. Importantly, and in contrast to their relationship with Mother, the children exhibited a strong bond with their pre-adoptive parents.

It is settled that once a court determines that a parent's conduct warrants termination of his or her parental rights, the court must conduct an analysis of the needs and welfare of the children based on the best interests of the children. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). In *In re L.M.*, *supra*, we explained, "One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond." When considering the parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well." *In re Z.P.,* 994 A.2d 1108, 1121 (Pa.Super. 2010).

Instantly, based on the trial court's credibility determinations and factual findings, it is apparent that Mother is not entitled to relief. Considering the totality of the circumstances, DHS presented sufficient evidence to support the trial court's finding that termination of Mother's parental rights would best satisfy the children's developmental, physical, and emotional needs. Ms. Owens testified that the children addressed their

foster mother as Mom and their foster father as Dad. N.T, 1/8/14, at 40. She remarked that there would be no negative effects on either child if Mother's parental rights were terminated, and that adoption was the most appropriate option. *Id*. at 40-41. She referenced that Mother had failed to remedy her drug problems, there was no record of mental health treatment at her June 19, 2013 meeting, and that the quality of her visits with the children prior to being suspended were not good. *Id*. at 36.

Ms. Snead testified that Mother was in denial about her drug habit, that her children would become hysterical before visitation and did not want to visit with Mother. According to Ms. Snead, the children would kick, scream and cry. She also stated that when Mother did visit with the children, she was high on drugs sixty-five percent of the time. In this regard, she discussed that Mother would have significant mood swings, fall asleep during visitation, and snap at the children if they referred to foster mother as Mom.

Ms. Snead set forth that Mother had not met her objectives for drug and alcohol testing, mental health treatment, or housing. In her view, the children were "very bonded" to their foster family and they "turn to them for nurture, lay on their shoulder, cry, help that is who they turn to." N.T., 1/8/14, at 88. She opined that there would be no negative effect on the children if Mother's rights were terminated. In support, she posited that the children do not "want to see her or want to visit with her . . . . they don't

ask for her now, they haven't seen her, they don't inquire about her." **Id**. at 90. Like Ms. Owens, she testified that adoption was the most appropriate step. For these reasons, Mother's second issue fails.

Mother's third claim merely reiterates her prior arguments and fails for the reasons already outlined. The final issue Mother advances is that the court erred in changing the goal from reunification to adoption. However, her argument is that because her parental rights should not have been terminated, the goal should not have been changed to adoption. As discussed above, the court did not err in terminating her parental rights. Since this is the only position forwarded by Mother relative to her final claim, and she fails to cite or discuss any case law, she is not entitled to relief. Accordingly, we affirm the orders terminating Mother's parental rights to D.N.M. and S.E.J.

Orders affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/8/2014