J-S88018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.J.K.P.-E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.T.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 344 EDA 2016 |

Appeal from the Decree December 17, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000261-2015,
CP-51-DP-0002528-2013

| | | |
|---|---|---|
| IN THE INTEREST OF: D.C.L.E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.T.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 345 EDA 2016 |

Appeal from the Decree December 17, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000260-2015,
CP-51-DP-0002527-2013

BEFORE:   OLSON, J., RANSOM, J., and STRASSBURGER, J.[*]

MEMORANDUM BY RANSOM, J.:                    **FILED JANUARY 23, 2017**

Appellant, J.T.P., ("Mother"), appeals from the decree in the

Philadelphia County Court of Common Pleas, which terminated her parental

_____

[*] Retired Senior Judge assigned to the Superior Court.

rights to her minor children, A.J.K.P.-E. and D.C.L.E.[1], pursuant to the

Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and 2511(b). After a

thorough review of the record, we affirm.

The relevant facts are as follows:

On December 20, 2013, DHS received a Child Protective Services (CPS) Report which alleged that Child, [A.J.K.P.-E].,[born August 2008,] was hit in the eye and on the leg with a stick by his Mother, J.[T.]P.; that [A.J.K.P.-E.] suffered bruising and swelling; and that he was fearful of returning home from school. It was alleged that [A.J.K.P.-E.] was watching television and doing his homework when Mother hit him; that he is in the kindergarten at McDaniel School; that he did not suffer from delays or disabilities; and that Mother used physical discipline in the past on both [A.J.K.P.-E.] and [D.C.L.E.], [born October 2006]. It was further alleged that [A.J.K.P.-E.] was transported to Saint Christopher's Hospital for a medical assessment and to the Special Victims Unit (SVU), that the Children resided with Mother at 2228 Dickenson Street in Philadelphia; that [A.J.K.P.-E.] had a slight speech impediment; and that Mother had five (5) prior assault arrests, including Endangering the Welfare of Children. The Report was indicated against Mother as a perpetrator of abuse.

On December 20, 2013, Dr. Pramath Nath of St. Christopher's Hospital examined [A.J.K.P.-E.] and observed bilateral bruises on the child's thighs, a bruise under the right eye and a healing burn across his entire left forearm. Dr. Nath determined that [A.J.K.P.-E.] suffered a second degree burn.

Dr. [Maria McColgan], the head of the Child Protection Clinic at St. Christopher's Hospital and an Expert in Pediatric and Child Abuse Medicine concluded that the burn on [A.J.K.P.-E.'s] arm was consistent with someone having held his arm over the stove and inconsistent with the child reaching for something on the stove.

---

[1] The trial court identifies the Children in an abbreviated fashion, A.J.K.P.-E. is referenced as A.P.E., and D.C.L.E. is referenced as D.P.E.

\*      \*      \*

On December 20, 2013, an Order of Protective Custody (OPC) was obtained and [D.C.L.E.] and [A.J.K.P.-E.] were placed at Catholic Social Services.

On December 20, 2013, DHS contacted Mother, who stated that the staff at McDaniel Elementary School never told her that [A.J.K.P.-E.] was transported to SVU; that his eye injury occurred while he was in school; and that the police and school official had forced [A.J.K.P.-E.] to say that his Mother had abused him. Mother admitted to using physical discipline on both Children in the past.

A Shelter Care Hearing was held on December 23, 2013, the OPC was amended to reflect that an Order of Protective Custody was obtained on 12/20/2013, the OPC [w]as lifted and the temporary commitment to DHS was ordered to stand. Mother was offered supervised visits at the agency.

\*      \*      \*

On December 30, 2013, Mother was arrested and charged with: 1) aggravated assault; 2) endangering welfare of Children-parent/guardian/other commits offense; 3) possessing instrument of crime with intent, simple assault-grading victim under 12 defendant 21 or older; 4) recklessly endangering another person; and 5) unlawful restraint/serious bodily injury. The Court granted a motion to quash on the first three charges and the remaining two charges were disposed at lower court. The matter was scheduled for a waiver trial on May 15, 2015, in Criminal Courtroom 1005.

On January 8, 2014, an Adjudicatory Hearing was held. The Court discharged the Children's temporary commitment to DHS; adjudicated both Children Dependent; and committed them to DHS. The Children were referred to Behavioral Health Services (BHS) for consultation and/or evaluation; a paternity test was ordered for putative father, C.E. as to [A.J.K.P.-E.]; Mother was referred to the Achieving Reunification Center (ARC[)]; and a criminal stay-away Order was Ordered to Stand. Mother to not have visits until therapist says appropriate. Grandmother to have supervised visits with the Children at the Agency.

On February 11, 2014, DHS held an initial Family Services Plan (FSP) Meeting.  The goal for [D.C.L.E.] and [A.J.K.P.-E.] was "Return to Parent".  The parental objectives established for Mother and Father were: 1) parents to meet with parent educator on a weekly basis to understand how their behavior/neglect resulted in injury and/or neglect to their Children; 2) Mother will meet with parent educator on a weekly basis to be educated on the expected behavior for Children; 3) Mother will set age appropriate expectations; 4) Father will meet with parent educator on a weekly basis to be educated on the expected behavior for Children; 5) Father will set age appropriate expectations; 6) Mother will participate in mental health evaluation; Mother will comply with all treatment recommendations; 7) Father will report to Family Court/Domestic Relations Division for paternity test; 8) Father will keep all visits and maintain regular contact with Children; 9) Father will meet regularly with agency social worker and follow through with Individual Service Plan (ISP); 10) Mother will meet regularly with agency social worker and follow through with ISP. Mother attended the meeting and signed the FSP.  C.E. participated via telephone.

On March 20, 2014, DHS referred Mother to ARC.  Areas of service included: parent education, anger management, mental health, employment, housing and women's empowerment group.

*    *    *

On August 6, 2014, a Permanency Review Hearing was held. The [c]ourt found that the Children received therapeutic staff support (TSS) services and trauma-focused therapy.  The [c]ourt ordered that both Children remain committed to DHS.  The [c]ourt found by clear and convincing evidence that Mother was the perpetrator of child abuse as to Children, [A.J.K.P.-E.] and [D.C.L.E.]  An Aggravated Circumstances Order was issued and that Mother's criminal Stay-Away Order as to both Children was to stand.  If Mother's Stay-Away Order is lifted, her visits are suspended until the Children's Therapist recommends otherwise. It was further ordered that no efforts are to be made to preserve the family and reunify the Children with Mother.

On January 26, 2015, a Permanency Review Hearing was held. The [c]ourt found that [A.J.K.P.-E.] remained placed at Devereux for psychiatric treatment; that he receives trauma-

- 4 -

focused therapy through Children's Crisis Treatment Center; and that DHS is exploring goal change/termination of parental rights. The [c]ourt ordered that [A.J.K.P.-E.] may be moved to appropriate treatment foster care prior to the next court hearing, if DHS and Child Advocate agree. The [c]ourt found that [D.C.L.E.] was doing well; that she receives trauma-focused therapy through Silver Springs. The [c]ourt ordered that Mother participate in the second half of the Parenting Capacity Evaluation authorized DHS to sign for [D.C.L.E.'s] treatment plan if Mother is not available. The next hearing for [D.C.L.E.] and [A.J.K.P.-E.] was scheduled as a Contested Goal Change/Termination Hearing.

Trial Court Opinion, 4/19/16 at 3-11.

In December 2015, following three days of hearings, the court terminated Mother's parental rights as to both Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), as well as 2511(b), and changed the children's goal to adoption. In January 2016, Mother was granted leave to appeal *nunc pro tunc*. She did so and filed a statement pursuant to Pa.R.A.P. 1925(b). In April 2016, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

Mother raises the following issues on appeal:

1.   Did the Department of Human Services (DHS) sustain the burden that Mother's rights should be terminated when there was evidence that [M]other had completed almost all of her permanency goals?

2.   Was there sufficient evidence presented to establish that it was in the best interest of the children to terminate [M]other's parental rights.

Appellant's Brief at 4.

Our standard of review regarding orders terminating parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence[2] that the asserted grounds for seeking the termination of parental rights are valid. *In re S.H.*, 879 A.2d at 806.

"The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. and J.G., Minors*, 855 A.2d 68, 73-74 (Pa. Super. 2004). "If competent evidence supports the trial court's findings, we will affirm even if the record could also support the

---

[2] The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re J.L.C. and J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

opposite result." ***In re Adoption of T.B.B., Jr.***, 835 A.2d 387, 394 (Pa. Super. 2003).

We only need to agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 20014) (*en banc*). As such, we will focus on 2511(a)(2) and 2511(b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a)** **General rule.** – The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b)** **Other considerations.** – The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6), or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We first examine the court's termination of Mother's parental rights pursuant to Section 2511(a)(2). To satisfy the requirements of Section 2511(a)(2), the moving party must prove by clear and convincing evidence the following elements 1) repeated and continued incapacity, abuse, neglect or refusal; 2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and 3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination based on incapacity are not limited to affirmative misconduct. Those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

Mother argues that she completed most of her permanency objectives and as such, DHS failed to meet its burden. Mother's assertion is misleading. While she has completed a parenting class and an anger management class, she has failed to attend mental health treatment or complete the second part of her parenting capacity evaluation. Notes of Testimony (N.T.), 5/14/15, at 60-61. Furthermore, although Mother completed an anger management class, the court expressed ongoing concern regarding Mother's anger. Trial Court Opinion, 4/19/16, at 20. The trial court noted concerns regarding Mother's irate behavior and that she was escorted out of the courtroom during a hearing. *Id.* In essence,

Mother has refused to meet her objectives, thus leaving her children without essential parental care, control or substance necessary for their mental well-being.

The trial court found persuasive the testimony of Dr. Erica Williams, the Director of Forensic Services at Assessment and Treatment Alternatives, Inc. and stipulated to be an expert in the area of parenting capacity and forensic evaluation of parenting capacity. According to Dr. Williams, Mother lacked the capacity to provide safety and permanency for the children. *Id.* at 21. Dr. Williams expressed concerns regarding Mother's mental health, failure to take responsibility for her children's injuries, and lack of treatment to address these issues. Dr. Williams concluded that Mother met the DSM 5 criteria for unspecified schizophrenia, spectrum, and other psychotic disorder. N.T. 12/17/15 at 7-16. Due to Mother's refusal to address her mental health objective, her continued incapacity renders her unable to provide parental care, control or subsistence to her children. Accordingly, termination under Section 2511(a)(2) was appropriate.

After we determine that the requirements of Section 2511(a) are satisfied, we proceed to review whether the requirements of Section 2511(b) are satisfied. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). Pursuant to Section 2511(b), the court, in terminating the rights of a parent, shall give primary consideration to the developmental, physical, and emotional needs and welfare of a child.

In evaluating the needs and welfare of the Children, it is evident that terminating Mother's parental rights is in their best interest. Due to abuse and the trauma inflicted by Mother, she has not visited with them since they were committed to DHS. N.T. 5/14/15 at 83. Furthermore, the Children have expressed no interest in seeing Mother. *Id.*; N.T., 7/28/15, at 27. When Mother's name was mentioned, A.J.K.P.-E. exhibited anxiety. N.T., 7/28/15, at 28. The trial court found credible the testimony of the Children's therapists as well as the testimony of the social workers, all of whom opined that termination was in the best interest of the children. Trial Court Opinion at 11-16. Terminating Mother's parental rights is in the Children's best interest, as Mother has failed to address her role in the abuse and trauma she inflicted on her children.

There is competent evidence in the record that supports the trial court's credibility and weight assessments that severing the bond with Mother would not cause the Children irreparable harm. Thus, we conclude that the trial court did not abuse its discretion in terminating Mother's parental rights to the Children with regard to section 2511(b).

Accordingly, after a careful review, we affirm the decree terminating Mother's parental rights on the basis of 2511(a)(1) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/23/2017