J-A32017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.J.M., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1848 EDA 2016 |

Appeal from the Order May 17, 2016
In the Court of Common Pleas of Chester County
Orphans' Court at No(s): AD-14-0063

BEFORE: DUBOW, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY RANSOM, J.: **FILED MARCH 01, 2017**

Appellant, S.J.M. ("Father"), appeals from the order in the Chester County Orphans' Court, which terminated his parental rights to minor child A.M.M., pursuant to the Adoption Act, 23 Pa.C.S. §§ 2511(a)(8) and 2511(b). After a thorough review of the record, we affirm.

The relevant facts are as follows:

C.L.R. ("Mother") and S.[J.] M. ("Father") are the birth parents of A.M.M. born December 19, 2011. Mother and Father were never married. On January 9, 2012, [Children, Youth and Families] C.Y.F. received a referral from the Pennsylvania Childline Registry concerning neglect of A.M.M. Childline reported that Mother was feeding the infant curdled milk, and Mother and Father were constantly fighting. C.Y.F. was unable to locate Mother and Father. On January 13, 2012, C.Y.F. received another referral from Childline. The report stated that Mother had not bathed A.M.M. who smelled of urine, that A.M.M.

---

[*] Retired Senior Judge assigned to the Superior Court.

had a lump on her head, and that Mother was homeless. In March of 2012, Mother, Father, and A.M.M. began living with A.M.M.'s maternal grandmother and maternal step-grandfather. On April 19, 2012, A.M.M.'s maternal grandmother called C.Y.F. stating that Mother was unstable, bi-polar and suicidal. The grandmother stated that Mother kicked A.M.M.'s crib and said, "I hate you" to the baby.

C.Y.F. attempted to help Mother and Father through the Family Preservation Unit. The issues were Mother's mental health, Father's inability to care for the child due [to] his work schedule, and domestic violence. C.Y.F. implemented a safety plan for A.M.M. and placed her in the custody of her maternal grandmother. In May of 2012, C.Y.F. learned that Mother had been a client at Penn Psychiatric Center in Phoenixville, Pennsylvania. Her attendance at therapy and her medication checks were reported as being inconsistent. On June 3, 2012, the police were called to the residence where Mother was staying after Father tried to choke Mother and knocked her to the ground. Father was charged with simple assault. A.M.M. was present during the altercation. Mother made arrangements for A.M.M. to stay with maternal grandmother.

On June 7, 2012, Father admitted to C.Y.F. caseworkers that he smoked crack cocaine and Mother admitted to abusing prescription medications. On June 18, 2012, Father and A.M.M. briefly stayed at a shelter when Mother resisted leaving the home after being evicted. In June of 2012, a Family Group Decision Making meeting was held to address the domestic violence issues. Relatives agreed to supervise visits between A.M.M. and her parents. On July 13, 2012, C.Y.F. received a call that Mother and Father were fighting with each other while A.M.M. cried in the background. A safety plan for A.M.M. to live with her paternal aunt was implemented.

On July 20, 2012, C.Y.F. reported that Mother had attended only one counseling session, and that Father was compliant with his treatment at Chester County Counseling Center. On July 25, 2012, at a Family Group Decision Making meeting, the family agreed that A.M.M. should return to the care of Father who was living with his paternal aunt and complying with drug/alcohol treatment. In August and September of 2012, C.Y.F. reported that Mother and Father were involved in verbal and physical altercations. On September 19, 2012, C.Y.F. implemented a third safety plan and placed A.M.M. with her maternal

grandmother and step-grandfather. Father was homeless after he was forced to leave his aunt's house.

In November 2012, C.Y.F. granted paternal grandparents unsupervised overnight visits with A.M.M. Paternal grandparents were required to supervise visits between Father and A.M.M. In January 2013, Mother and Father resumed living together. Police were called to their residence when Mother and Father got into an altercation with each other and with other residents. On January 24, 2013, Mother reported to C.Y.F. that she cut herself and used heroin. In February 2013, Mother moved into the home of friends and Father moved into the home of his mother.

On April 26, 2013, A.M.M. was adjudicated a Dependent Child. Father initially had supervised bi-weekly visits with A.M.M. at his mother's house. Father's mother and his sister supervised the visits. In November 2013, Father's visits became semi-supervised weekly. In March 2014, Father's visits with A.M.M. became unsupervised every weekend from Friday to Sunday. On July 18, 2014, A.M.M. was bit by Father's dog while she was visiting him at his sister's residence. Father's visits were then changed to weekly supervised for four hours. In October, 2014, Father's weekly supervised visits with A.M.M. were increased to six hours. In January 2015, Father's weekly supervised visits with A.M.M. were increased to eight hours. Pursuant to the January 26, 2015[,] Dependency Court Order, Father was required to maintain stable employment; maintain stable housing, follow all mental health treatment recommendations and participate in Life Skills.

. . .

On April 29, 2015, Mother signed a Statutory Consent to the adoption of A.M.M.

Trial Court Adjudication and Order, 8/07/15, at 1-5 (findings of fact re-organized into paragraph form).

In August 2014, C.Y.F. filed a petition for the involuntary termination of Father's parental rights. In August 2015, after a hearing, the petition was denied without prejudice.

Thereafter, C.Y.F. continued to monitor Father's inconsistent housing and employment, his lack of mental health counseling, and lack of drug and alcohol counseling. *See* Trial Court Opinion, 07/05/2016, at 3. On January 13, 2016, C.Y.F. filed a second petition for involuntary termination of Father's parental rights.

A hearing was held in May 2016, at which the following, additional evidence was adduced. As of September 2015, Father could no longer verify his housing arrangements, though he claimed to reside in a one-bedroom apartment with his girlfriend. *Id.* at 3-5. Father was receiving workers' compensation benefits and recently was cleared to return to work at a car wash located in Norristown, PA. Father was paid $8 per hour. Although he could work from thirty to forty hours per week, his hours were weather-dependent and more limited during inclement weather. *Id.* at 5. Father had been terminated from his previous mental health program for non-attendance and acknowledged that he was not currently receiving mental health counseling. *Id.* at 6. Father acknowledged that he was not currently in drug or alcohol treatment and, in December 2015, had tested positive for marijuana and cocaine. Following his drug test, Father scheduled outpatient sessions at the Chester Counseling Center but did not attend. *Id.* at 6-7.

Following the hearing, the trial court terminated Father's parental rights. On June 15, 2016, Father's counsel timely filed a notice of appeal as well as a statement pursuant to Pa.R.A.P. 1925(b). The trial court issued a responsive opinion.

Father raises the following issues on appeal:

1. [C.Y.F.] did not meet the standard for demonstrating by clear and convincing evidence that Father is unable to provide a minimum level of parental care for Child, or that the conditions which he caused which led to her placement were still in effect. The trial court abused its discretion in finding that [C.Y.F.] met this burden.

2. [C.Y.F.] did not meet the standard for demonstrating by clear and convincing evidence that the termination of Father's parental rights would promote the needs and welfare of Child. The trial court erred in finding that [C.Y.F.] met this burden.

3. The trial court failed to consider sufficiently the effect on the child of severing the parent child bond between S.J.M., biological father ("Father") and A.M.M. ("Child").

Appellant's Brief at 8.

Our standard of review regarding orders terminating parental rights is

as follows:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). "The trial court is free to

believe all, part, or none of the evidence presented, and is likewise free to

make all credibility determinations and resolve conflicts in the evidence." *In*

*re M.G. and J.G., Minors*, 855 A.2d 68, 73-74 (Pa. Super. 2004). "If

competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." ***In re Adoption of T.B.B., Jr.***, 835 A.2d 387, 394 (Pa. Super. 2003).

In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re S.H.***, 879 A.2d at 806. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re J.L.C. and J.R.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003).

This Court may affirm the trial court's decision with regard to any one subsection of Section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 20014) (*en banc*). However, the trial court limited its analysis to Section 2511(a)(8), which, along with Section 2511(b), provides as follows:

**§ 2511. Grounds for involuntary termination**

**(a)**   **General rule.** – The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

*     *     *

(8)   The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

**(b) Other considerations.** – The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6), or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

We first examine the court's termination of Father's parental rights pursuant to Section 2511(a)(8). In order to terminate parental rights under Section 2511(a)(8), the court conducts a three-part analysis in which it must determine whether the agency has proven by clear and convincing evidence:

"(1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child."

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-1276 (Pa. Super. 2003).

Here, A.M.M. was removed from her Father's care and custody and placed in C.Y.F. custody in April 2013. A.M.M. has been removed from Father's care for well over twelve months. Thus, the first requirement of Section 2511(a)(8) was clearly satisfied.

Moreover, the conditions that led to A.M.M.'s removal and placement continue to exist. A.M.M. was removed from her parents care due to

- 7 -

domestic violence concerns, drug abuse, and lack of stable housing. Father complied with his objectives for a brief period. However, at the time of the termination hearing there were still concerns regarding Father's inconsistent housing, lack of mental health counseling, and drug and alcohol treatment. Notes of Testimony ("N.T."), 5/16/16, at 10. The C.Y.F. foster care caseworker, Joe Turney, testified that Father was living in a one-bedroom studio apartment and failed to provide a lease or verification from the landlord that he was permitted to reside there. *Id.* at 11-12.

Mr. Turney further testified that the last time Father attended mental health counseling was in July 2015, and was discharged for non-attendance. *Id.* at 17. In August 2015, at the time of the first termination hearing, Father was compliant with drug and alcohol treatment. However, in December 2, 2015, following a dependency court hearing Father tested positive for cocaine and marijuana. *Id.* at 14. As a result, Father was scheduled for outpatient drug and alcohol counseling. Father failed to attend the scheduled outpatient session and has not provided C.Y.F. with documentation that he is receiving any treatment elsewhere. *Id.* at 16.

In terminating parental rights under Section 2511(a)(8), the trial court is not required to evaluate a parent's current "willingness or ability to remedy the conditions that initially caused placement." *In re Adoption of T.B.B.*, 835 A.2d at 396; *see also In re Adoption of M.E.P., supra*, at 1276. However, by Father's own admission, he was not receiving mental health counseling, nor was he receiving drug or alcohol counseling. N.T. at

79. While Father had a brief period of compliance he has failed to remedy the conditions which led to A.M.M.'s removal. Therefore, the second requirement of Section 2511(a)(8) was satisfied.

We must now consider whether the trial court abused its discretion in concluding that DHS proved, by clear and convincing evidence, that "termination of parental rights would best serve the needs and welfare of the child."

> With respect to the "needs and welfare" analysis pertinent to Sections 2511(a)(8) and (b) we have observed: [I]nitially, the focus in terminating parental rights is on the parent, under Section 2511(a), whereas the focus in Section 2511(b) is on the child. However, Section 2511(a)(8) explicitly requires an evaluation of the "needs and welfare of the child" prior to proceeding to Section 2511(b), which focuses on the "developmental, physical and emotional needs and welfare of the child." Thus, the analysis under Section 2511(a)(8) accounts for the needs of the child in addition to the behavior of the parent.

*In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*) (citations omitted).

We discern that there was ample testimony in the record from which the trial court appropriately concluded that termination of Father's parental rights best served the needs and welfare of A.M.M. Father has failed to maintain sobriety and after three years still does not have stable housing. Furthermore, in his testimony, Mr. Turney stated that Father continued to have unrealistic expectations regarding A.M.M.'s safety. N.T. at 10. As the trial court's conclusions are supported in the record, we discern no abuse of

discretion in the conclusion that the requirements for termination in Section 2511(a)(8) have been met.

After we determine that the requirements of Section 2511(a) are satisfied, we proceed to review whether the requirements of Section 2511(b) are satisfied. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). Pursuant to Section 2511(b), the court, in terminating the rights of a parent, shall give primary consideration to the developmental, physical, and emotional needs and welfare of a child.

Appellant contends that the trial court erred in severing the parent child bond between Father and A.M.M. and that the trial court erroneously relied on the testimony of the caseworker who was not qualified as an expert to render an opinion regarding the bond. We disagree. When conducting a bonding analysis in a termination of parental rights proceeding, the court is not required to use expert testimony, and social workers and case workers can offer evaluations. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). Mr. Turney testified that there was a bond between Father and A.M.M., however the issue is not whether a bond exists, but specifically whether a parent-child bond exists. The fact that A.M.M. has affection for Father is insufficient to establish that a beneficial bond exists. *See In re K.K.R.-S., K.M.R., K.A.R.*, 958 A.2d 529, 534 (Pa. Super. 2008) (quoting *In re Involuntary Termination of C.W.S.M.*, 839 A.2d 41, 418-419 (Pa. Super. 2003) ("The bonding cannot be in one direction – that of child to the parent

– but must exhibit a bilateral relationship which emanates from the parents' willingness to learn appropriate, parenting, anger management, drug rehabilitation and marital stability."). Furthermore, the court in **C.W.S.M.** states that concluding a child has a beneficial bond with a parent simply because a child harbors affection for the parent is not only dangerous, it is logically unsound. **Id.**

A.M.M. has been with her maternal grandmother for three years. A.M.M. refers to her maternal grandmother as mother. N.T. at 29-30. While there is a bond between Father and A.M.M., Mr. Turney testified that A.M.M. looks toward her maternal grandmother as the parental figure in her life. **Id.** at 30. As there is competent evidence in the record that supports the trial court's credibility and weight assessments that severing the bond with Father would not cause the child irreparable harm, we conclude that the trial court did not abuse its discretion in terminating Father's parental rights to the Children with regard to Section 2511(b).

Accordingly, after a careful review, we affirm the decree terminating Father's parental rights on the basis of Sections 2511(a)(8) and (b).

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/1/2017