**In re In the Interest of S.H.**

**Appeal of V.H.**

Superior Court of Pennsylvania.

Submitted May 9, 2005.

Filed July 13, 2005.

Ralph T. Forr, Jr., Altoona, for V.H., appellant.

Terressa E. George, Altoona, for S.H., appellee.

William R. Brenner, Hollidaysburg, Children and Youth, appellee.

Before: LALLY–GREEN, McCAFFERY, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 V.H. (Mother) appeals from the order terminating her parental rights to her eight-year old daughter, S.H. (Child). The trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5), and (8), based on Mother's long-term addictions to drugs and alcohol, her mental health problems, and Child's need for permanency and stability. On appeal, Mother argues that the trial judge abused her discretion by declining to recuse herself, because the same trial judge sentenced Mother in a criminal matter in 2002 and changed Child's placement goal to adoption at a hearing in 2003. Mother also contends that the trial court gave insufficient consideration to Child's needs and welfare, and that the Blair County Children & Youth Services (CYS) did not pres-

ent clear and convincing evidence to satisfy the requirements of § 2511(a) and (b). Finding no merit in Mother's claims, we affirm.

¶ 2 Child was born on January 27, 1997. In October 2001, CYS received reports that Child was being sexually abused by her natural father, S.W.H. (Father). CYS found the abuse to be "indicated," and thereafter Child was removed from Father. On October 30, 2001, Mother signed a voluntary placement plan for Child and entered a hospital for inpatient mental health treatment. Since that time, Child has remained in CYS's care continuously. On two earlier occasions, CYS had become involved with the family due to Mother's problems and her inability to care for Child, but it did not seek custody of Child until the reports of sexual abuse in 2001.

¶ 3 Mother has an extensive history of addictions and mental health problems. Between February 1998 and October 2001, Mother was admitted to the Altoona Hospital nine times for inpatient mental health treatment, and was admitted to at least four detoxification programs for her drug and alcohol addictions. After Child's placement with CYS, numerous dependency and permanency hearings were held, and CYS provided counseling and mental health services to Mother. Early in 2002, Mother was sentenced to two years' probation on drug charges. When she was arrested for violating her probation on June 20, 2002, Mother's probation was revoked and she was sentenced to two to four years' incarceration.

¶ 4 On February 27, 2003, the court declared Child dependent and changed her placement goal to adoption. Mother appealed the goal change to our Court, and we affirmed. See In re: S.H., appeal of V.H., 625 WDA 2003 (Jan. 23, 2004) (nonprecedential decision). On June 17, 2004, CYS filed a petition to terminate Mother's and Father's parental rights.

¶ 5 Before the termination hearing, Mother was placed under a detainer by the United States Immigration and Naturalization Service (INS). On August 13, 2004, Mother attended an INS hearing and was scheduled for deportation to Argentina following her incarceration. The record does not give any other information regarding Mother's deportation.

¶ 6 Two weeks after the INS hearing, the termination hearing occurred. At this time, Mother filed a motion for recusal. The presiding judge, the Honorable Jolene Grubb Kopriva, was the same judge who sentenced Mother to two to four years' imprisonment on drug charges, and who changed Child's placement goal to adoption in 2003. Judge Kopriva denied Mother's motion. At the hearing, Mother introduced evidence that she successfully completed several programs on parenting, drugs and alcohol, social skills, spirituality, and mental health during her imprisonment. CYS introduced testimony from the February 2003 goal change hearing and it presented the testimony of its caseworker, who testified that Child is thriving in fostercare and that termination is in Child's best interest. On November 17, 2004, Judge Kopriva entered an Order and Opinion terminating Mother's parental rights to Child. Mother then filed the instant appeal. The Order also terminated Father's parental rights, but he is not a part of this appeal.

¶ 7 Mother raises the following questions for our review:

I. DID THE TRIAL COURT COMMIT AN ERROR OF LAW BY INVOLUNTARILY TERMINATING MOTHER'S PARENTAL RIGHTS WITHOUT FULLY CONSIDERING THE IMPACT OF TERMINATION ON THE EMOTIONAL

NEEDS AND WELFARE OF THE CHILD?

II. DID [CYS] FAIL TO PROVE BY CLEAR AND CONVINCING EVIDENCE BOTH THAT MOTHER REFUSED OR WAS UNABLE TO PARENT THE CHILD AND WHAT BEST SERVES THE NEEDS AND WELFARE OF THE CHILD?

III. DID THE TRIAL COURT ABUSE ITS DISCRETION AND ALLOW THE APPEARANCE OF IMPROPRIETY TO ARISE BY REFUSING TO RECUSE ITSELF AND INSISTING ON BOTH SENTENCING APPELLANT MOTHER TO 2 TO 4 YEARS IN STATE PRISON AND 6 MONTHS LATER DIRECTING THAT HER DAUGHTER BE PLACED FOR ADOPTION?

Brief for Appellant at 4.

■ ¶ 8 Our scope and standard of review follow.

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re C.S.,* 761 A.2d 1197, 1199 (Pa.Super.2000) (citations omitted). In addition, the trial court, as fact finder, is the sole determiner of the credibility of witnesses and resolves all conflicts in testimony. *See In re Adoption of A.C.H.,* 803 A.2d 224, 228 (Pa.Super.2002).

■ ¶ 9 In her first question, Mother argues that the trial court did not sufficiently consider the impact termination would have on Child.

The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine ... whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

*In re C.S.,* 761 A.2d 1197, 1202 (Pa.Super.2000) (internal citations and quotation marks omitted). Mother briefly argues, without citation to legal authority, that the trial court should have granted her motion for a special bonding assessment. Brief for Appellant at 9. Given Mother's failure to cite apposite legal authority, however, we find no error in the trial court's denial of Mother's request for the court to provide a psychological evaluation of Child using public funds. *See Nemirovsky v. Nemirovsky,* 776 A.2d 988, 994 (Pa.Super.2001) (finding waived an issue in the appellant's brief where the brief contained only "a cursory, four sentence argument" and no citation to caselaw on that issue); *see also In re Adoption of T.B.B.,* 835 A.2d 387 (Pa.Super.2003) (affirming the trial court's denial of a parent's request for an independent psychological evaluation in a termination proceeding).

¶ 10 We now reach the broader issue of whether the court gave sufficient consideration to the effect of termination on Child. We conclude that it did. In its Opinion, the trial court recited the testimony of Child's counselor, Ms. Marion Henry, that Child would not suffer any long-term emotional harm from termination/adoption.

Trial Court Opinion, 11/17/04 (T.C.O.), at 10, 14 (citing Notes of Testimony, 2/27/03, at 113). In addition, the trial court considered the testimony of Mr. Lynn Kagarise, who evaluated the family in December 2002. T.C.O. at 13–14. The trial court specifically noted Mr. Kagarise's statement that if there is a bond between Mother and Child, it is "dysfunctional and unhealthy." T.C.O. at 13. The court also noted Child's need for permanency. T.C.O. at 9. Given these statements, we cannot conclude that the trial court failed to adequately consider the effect of termination upon Child.

¶ 11 In her second question for review, Mother contends that CYS did not prove the elements of § 2511 by clear and convincing evidence. Mother correctly states that "[i]n a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so." *In re M.G. and J.G.*, 855 A.2d 68, 74 (Pa.Super.2004) (quoting *In re Julissa O.*, 746 A.2d 1137, 1139 (Pa.Super.2000)). Our appellate review, however, does not require us to find clear and convincing evidence. We will affirm if the trial court's findings are supported by competent evidence, even if the record could also support an opposite result. *See In re A.R.M.F.*, 837 A.2d 1231, 1233 (Pa.Super.2003).

¶ 12 In addition, we need only find competent evidence to support the trial court's decision as to any one subsection of 23 Pa.C.S. § 2511(a) to affirm the termination. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super.2004). Accordingly, we will analyze Mother's argument by examining the requirements of § 2511(a)(8), which requires CYS to prove:

> The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(8). Mother does not develop any argument regarding the first, second, and fourth requirements; thus, we will only discuss the third element, whether there is competent evidence that "the conditions which led to the removal or placement of the child continue to exist." *Id.*

¶ 13 It is clear that Mother has made significant life achievements while incarcerated. She has successfully completed several programs on parenting, drugs and alcohol, social skills, spirituality, and mental health. Notes of Testimony, 8/26/04, at 97–100. While we commend Mother for her efforts, we are constrained to affirm because there is competent evidence that the conditions continue to exist.

¶ 14 CYS introduced, *inter alia,* the February 2003 testimony of Mr. Kagarise, who evaluated Mother six months after her incarceration began. At that time, he stated that Mother's progress would need to be considered over several years, and that reunification could not be contemplated until Mother maintained a sober lifestyle in the outside community for at least one to two years. Notes of Testimony, 2/27/03, at 80. Child's therapist agreed, claiming that Mother would not be able to care for Child until Child was eleven or twelve years old. Notes of Testimony, 2/27/03, at 113. Even though Mr. Kagarise has not evaluated Mother since January 2003, the trial court found his evaluation more credible than the more recent evaluations by Mother's treating psychiatrist, Dr. Angela Lindemuth, who testified at the termination hearing on behalf of

Mother. Opinion, 11/17/04, at 11–12; *and see Adoption of A.C.H.*, 803 A.2d at 228 (stating that credibility determinations are outside of our scope of review).

¶ 15 The trial court concluded,

Additionally, even if one accepts the testimony of Dr. [Lindemuth], any progress made by Mother in a controlled environment such as SCI–Cambridge Springs would require testing through decreased supervision and greater independence (halfway house and other treatment models) to determine if Mother can maintain her progress in less structured conditions. [Child] has already spent more than half her life in custody of BCCYS without permanency. Requiring an additional 1–2 years of Mother's stability before return of [Child] would be appropriate in light of the past severity of her addiction and mental health issues.

Opinion, 11/17/04, at 12. In light of Child's need for permanency and stability, we conclude that this is competent evidence to support termination under § 2511(a)(8). *See, e.g., B.L.L.*, 787 A.2d 1007, 1011 (Pa.Super.2001) (finding competent evidence to support termination of the mother's parental rights where psychologist testified that, due to her mental health and drug problems, the mother "would not be able to recover quickly enough to be an effective parent" to her twelve-year old daughter).

¶ 16 By confining our analysis to subsection 8, we do not reach Mother's argument that CYS failed to prove "that Mother refused or was unable to parent the child," Brief for Appellant at 13 (citing *In re T.F.*, 847 A.2d 738, 744–45 (Pa.Super.2004)), because *T.F.* concerned only subsection 1. *See T.F.*, 847 A.2d at 742 n. 4. Similarly, we do not need to address Mother's argument that termination was improper because "there is a reasonable possibility

that the causes and conditions which led to the separation can be remedied." Brief for Appellant at 15 (quoting *In re Adoption of Sabrina*, 325 Pa.Super. 17, 472 A.2d 624 (1984)). The *Sabrina* court relied on subsection 5, which clearly states, "the parent cannot or will not remedy [the] conditions within a reasonable period of time." 23 Pa.C.S. § 2511(a)(5). On the other hand, subsection 8, the subsection relevant to our discussion, merely requires that the conditions "continue to exist." 23 Pa.C.S. § 2511(a)(8). Accordingly, we do not need to discuss these cases further.

¶ 17 Regarding § 2511(b), Mother argues that CYS failed to meet its burden, essentially because Mother has tried so hard to improve herself while she has been in prison. Brief for Appellant at 13–15. Nothing in Mother's argument reflects on *Child's* bond with Mother, the effect of termination on *Child*, or what course of action will best meet *Child's* needs and welfare. Under § 2511(b), the court must "give primary consideration to the developmental, physical and emotional needs and welfare of the child." *See also In re J.I.R.*, 808 A.2d 934, 937 (Pa.Super.2002) ("Above all else in determining whether parental rights should be terminated, adequate consideration must be given to the needs and welfare of the child."); *In re B.L.L.*, 787 A.2d 1007, 1010 (Pa.Super.2001) (same). Accordingly, evidence of Mother's efforts is inapplicable under § 2511(b). Given the absence of pertinent discussion, we find no merit in Mother's claim of error.

¶ 18 In her final question, Mother contends that Judge Kopriva abused her discretion when she declined to recuse herself. Mother argues that because Judge Kopriva sentenced Mother in 2002 and presided over Child's dependency hearings, including the goal change hearing in 2003, she could not preside impar-

tially over Mother's termination proceeding.

> The standards for recusal are well established. It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. . . .
>
> Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion. In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent.

*Arnold v. Arnold,* 847 A.2d 674, 680–81 (Pa.Super.2004).

¶ 19 Upon review, we find no abuse of discretion. There is no support for Mother's allegation that "it appears the court merely sentenced mother to the 2 to 4 year state prison term to simplify the termination of her parental rights." Brief for Appellant at 17. Mother has not demonstrated any bias or prejudice. *See Arnold,* 847 A.2d at 681 (holding that past "[a]dverse rulings alone do not establish the requisite bias warranting recusal, especially where the rulings are legally proper"); *In re Quick,* 384 Pa.Super. 412, 559 A.2d 42, 46 (1989). ("It is unsupportable that an experienced trial judge is incapable of making factual determinations and legal findings in regard to the same child at different hearings . . . without being subject to bias or prejudice."). Any knowledge of the parties that Judge Kopriva gained by presiding over the sentencing was not detrimental to this case. Regardless of which trial judge sentenced Mother, the fact of Mother's incarceration on the drug charges would have been known at the termination hearing.

¶ 20 In addition, Judge Kopriva's involvement with Child's goal change and dependency hearings is appropriate in termination proceedings. Judge Kopriva conducted the *in camera* interview of Child on June 5, 2002, and is intimately familiar with the parties from the other family law hearings and proceedings.

> The consistent thread, over many years flowing through the management of family cases, has been that so far as possible the judge who initially heard the family matter should remain with it to its conclusion. Indeed, one of the most disruptive and disconcerting factors in multi-judge jurisdictions is the fragmentation of different aspects of a family case resulting from the hearing by several judges of different stages of a particular proceeding. Family problems are complex but intricately intertwined so that the best treatment so far as the parties are concerned, particularly in regard to children, as well as the most consistent and efficient approach from the judicial point of view, is for the same judge to remain involved with the family along the continuum of the particular case.
>
> \* \* \* \* \* \*
>
> No one is in a better position to determine whether the parties have fulfilled their mutual responsibilities toward these goals than the Juvenile Court Judge who was involved with the child from the beginning. A new judge will not have the benefit of recall of hearings, reports and directions not fully detailed in the cold or abbreviated reports and records presented at the termination proceeding. That is not to say these recollections will be the basis for the termination decision, which must stand on its own evidence and be established by clear and convincing evidence. Rather, it will assure the record is full and complete so that termination will

not be granted if the agency is overreaching, or termination won't be denied because of a pro forma presentation. *In re Quick,* 384 Pa.Super. 412, 559 A.2d 42, 46 (1989). Accordingly, we find no abuse of discretion in Judge Kopriva's refusal to recuse herself.

¶ 21 Thus, we find no grounds on which to grant Mother the relief she seeks. To the extent Mother raises additional issues in her brief, we find them waived. *See Thomas v. Elash,* 781 A.2d 170, 176–77 (Pa.Super.2001) (finding waived any issues not raised in the Statement of Questions Involved); *Nemirovsky v. Nemirovsky,* 776 A.2d 988, 994 (Pa.Super.2001) (finding waived an issue in the appellant's brief where the brief contained only "a cursory, four sentence argument" and no citation to caselaw on that issue). We therefore affirm the order terminating Mother's parental rights to Child.

¶ 22 Order AFFIRMED.