J-S58030-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.F., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 884 WDA 2019 |

Appeal from the Order Dated May 16, 2019
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-067-2019

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and DUBOW, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED DECEMBER 30, 2019**

T.F. (Mother) appeals from the order dated May 15, 2019, involuntarily terminating her parental rights to her son, D.F. (Child), born in August of 2017.  We affirm.

On appeal, Mother's brief provides the following question for our review:

> Did the trial court abuse its discretion and/or err as a matter of law in concluding that termination of [n]atural Mother's parental rights would serve the needs and welfare of the Child, pursuant to 23 Pa.C.S. § 2511(b)?

Mother's brief at 6.

We review an order terminating parental rights in accordance with the following standard:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must

stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). The burden is upon the petitioner to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid. *R.N.J.*, 985 A.2d at 276. Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

We have reviewed the certified record, the briefs of the parties, the applicable law, and the comprehensive opinion authored by the Honorable Cathleen Bubash of the Court of Common Pleas of Allegheny County, filed on August 1, 2019. We conclude that Judge Bubash's well-reasoned opinion

properly disposes of the issue raised by Mother. In particular, Judge Bubash recognized that no bond existed between Mother and Child in that Child has lived with foster parents almost exclusively for nearly his entire life and that foster parents are the people that Child has relied upon to fulfill his daily needs. The court noted that Mother has not provided any care of Child and has not attempted to maintain any contact with Child. The court also relied on the testimony of Dr. Patricia Pepe, who performed numerous psychological evaluations of Child and foster parents, and concluded that termination of Mother's parental rights and adoption by foster parents would best serve the needs and welfare of Child. *See In re T.S.M.*, 71 A.3d 251, 269 (Pa. 2013) (stating that in cases dealing with termination of parental rights, the law should be applied "with an eye to the best interests and the needs and welfare of the particular children involved"). Thus, we conclude that Judge Bubash's opinion properly disposes of the issue Mother raises in this appeal. Accordingly, we adopt Judge Bubash's opinion as our own and affirm the order appealed from on that basis.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2019

- 3 -

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
ORPHAN'S COURT DIVISION

IN RE:

D.F., a minor child

APPEAL OF:

T.F.,
Natural Mother

CHILDREN'S FAST TRACK OPINION

TPR    CP-02-DP-0001069 2019
      CP-02-AP-067-2019

Sup. Ct. No.: 884 WDA 2019

OPINION

July 31, 2019                            Judge Cathleen Bubash

On April 4, 2019, the Allegheny County Office of Children, Youth and Families ("CYF") filed a petition for involuntary termination of the parental rights ("TPR") of the natural parents of D.F, born August 30, 2017 ("Child"). Appellant, T.F. ("Mother"), is Child's natural mother.[1]

At the conclusion of the May 16, 2019 TPR hearing, I found CYF had proven by clear and convincing evidence that grounds for termination existed and that it best served the needs and welfare of Child. I issued Orders terminating the parental rights of the natural parents to the Child. Mother timely appealed and filed her 1925(b) Statement. For the reasons set forth below, my Orders should be affirmed.

---

[1] The first three men named by Mother as Child's natural father were disestablished by paternity testing. The fourth man named by Mother has not been located nor has he stepped forward.

1

## Statement of Facts

Child was born August 30th 2017, 5 weeks premature. He was in the hospital's NICU until his release on September 8th, 2017. On September 7, 2017, CYF began crisis services due to concerns about Mother's mental health. (TR. p. 11). On September 8th, the Child was released to the care of the mother and D.H., one of the men alleged to be Child's father. On that same day, Child was returned to the hospital after he was attacked by Mother within three hours of his release. (TR. p. 39). Mother had attacked Child and D.H with a knife, stabbing Child immediately next to his eye. Mother claimed to have heard voices which told her to kill the baby and to kill D.H. if he interfered with the killing because Child was "a devil baby." Child incurred injury as a result of the incident, which has required numerous treatments and has impacted his vision, likely permanently. (TR. p. 20-25, 50).

Mother was arrested and charged with attempted homicide in relation to this incident and a No Contact Order was issued. From September 8 to September 13, 2017, Child was kept in the hospital for treatment of the injury (TR. p. 17), after which he was released to CYF and placed in foster care. All told, Child was in Mother's care for less than one day and in that day, he was seriously injured at Mother's hand. Child was placed in a pre-adoptive foster family on September 13, 2017. He remained with that family at the date of hearing.

Child's maternal aunt, K. F. was not initially considered as a family placement, but then had fairly regular visitation with Child and was considered. Due to concerns raised by her background, work schedule and psychological evaluation, K.F. was ruled out as a placement.[2]

On September 28, 2017, CYF filed a dependency petition, (TR. p. 12-13), and Child was adjudicated dependent on November 2, 2017. Permanency hearings were held and, ultimately, the TPR was scheduled for May 16, 2019.

---

[2] Dr. Pepe evaluated Child with K.F on July 24, 2018 and performed a psychological evaluation of K.F. on August 2, 2018 and concluded, for reasons which are not relevant to Mother's appeal, that K. F. should not be considered for Child's placement and that Child's best interests would be served by remaining with his foster parents

2

Evidence presented at the May 16th hearing demonstrated that Mother has not been able to comply with the goals established for her in Family Plans and ordered. Mother has an extensive mental health history. (TR. p. 38). Mother was to get treatment for her mental illness as well as resolve her criminal charges. (TR. p. 45-47). Mother was arrested for the attempted murder of Child and has had no contact with Child since September 8th. (TR. p. 47). Mother is unable to have her No Contact Order lifted, and is still incarcerated. Evidence was also presented regarding the seriousness of Child's injuries, as well as the close bond Child has with his foster parents.

I granted CYF's petition and terminated the rights of Child's natural parents. Mother filed the instant appeal and averred as follows in her 1925(b) Statement:

> "The trial court abused its discretion and/or erred as a matter of law in concluding that termination of Natural Mother's parental rights would serve the needs and welfare of the child pursuant to 23 Pa.C.S. 2511(b)."

For the reasons set forth below, my Order to terminate Mother's parental rights to the Child serve the needs and welfare of Child and should be affirmed.

## Discussion

Mother does not contest that grounds existed to terminate her parental rights. Instead, she contests only my decision that termination of her parental rights serves the best interest of Child under §2511(b). Because Mother does not contest that grounds exist for termination, the reviewing court need only consider whether my decision that termination best serves Child's developmental, physical and emotional needs and welfare was supported by competent evidence. See *In re J.F.M.*, 71 A.3d 989 (Pa. Super. 2013)

CYF sought to terminate Mother's parental rights under 23 Pa.C.S. §2511(a)(2), (5), and (8). The statute provides for the involuntary termination of parental rights if the petitioner can establish any one of the following grounds:

> § 2511. Grounds for involuntary termination.
> (a) General Rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
> * * * * * *

3

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * * * * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * * * * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child." 23 Pa.C.S. §2511, *In re Adoption of R.J.S.*, 901 A.2d 502, (Pa. Super. 2006)

Once the statutory grounds for termination have been shown by clear and convincing evidence, the Court then looks to the best interest of the Child as provided by §2511(b):

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition. 23 Pa.C.S. §2511.

As discussed in *In re N.A.M.*, 33 A.3d 95 (Pa. Super. 2011), the inquiry into whether terminating a parent's rights serves the child's needs and welfare necessarily includes inquiry into the nature and status of any bond between the parent and child and the effect on the child of severing that bond, if it exists. In this case, Mother and Child spent mere hours together after release from the hospital and during that short time, Mother severely injured Child. Child has been removed from Mother's care for over 20 months at the time of hearing and Mother has not seen child since the No Contact Order was issued. At the

4

to severe abuse at Mother's hand, Mother had been with her child for less than one day, which provides for no time or circumstance for Child to have formed a bond with Mother. Conversely, Child has formed a loving, primary attachment to his two foster parents who are the only parents he has known.

In *In re R.N.J.*, 985 A.2d 273 (Pa.Super. 2009), the Superior Court found it was proper to terminate parental rights under §2511(b) when there was no evidence that there was a bond between a child and his natural parent but clear evidence of a bond with pre-adoptive foster parents. Those same facts regarding bonding present themselves here.

In determining that termination of Mother's parental rights best served the needs and welfare of Child in the instant matter, I considered the history of the case presented by her caseworkers, and I gave special weight to the findings and recommendations of Dr. Patricia Pepe, who completed numerous psychological evaluations in this case, as well as interactional observations with Child, including with the foster parents and Child's maternal aunt, K.F.

The CYF caseworker testified that Child had a strong bond with the foster parents, whom he calls "Mama and Dada" and that he was happy and active (TR. p. 49-50). In her October 01, 2018 evaluation, Dr. Pepe found Child to be thriving in his present placement, and primarily attached with his pre-adoptive foster parents, who Dr. Pepe found to be "extremely invested" in Child.

Importantly, Dr. Pepe found that a "primary attachment" had been formed between Child and his foster parents and that Child viewed them as his "primary and psychological parents." (Dr. Pepe's report; p. 2, 7). Dr. Pepe found that removing Child from his foster parents would put him "at a very high risk for developing Reactive Attachment Disorder." (Dr. Pepe's report p. 8). She registered significant concerns regarding placing Child with K.F. She concluded that termination of Mother's parental rights and adoption by the foster parents was in the best interest of the Child. I agreed, based on both the results of Dr. Pepe's evaluations and observations and the evidence presented, that CYF had met its burden under §2511(a)(2)(5) and (8) and that termination of Mother's rights to the Child best served his needs and welfare pursuat to §2511(b).

Almost two years have passed since this young Child was placed in care. Since his removal, Child has thrived in the care of his foster parents, who have been diligent in

5

getting him the medical attention he needs to recover from Mother's attack. Under the totality of the circumstances, I found CYF had met their burden for termination and that it was in Child's best interest to remain with his foster parents and change the permanency goal to that of adoption.

Viewing the lack of any parent-child bond between Child and Mother, Mother's psychological condition, and her inability to care for Child at any time in the near future, I determined that termination of her parental rights was not only warranted but is also in the best interest of the Child pursuant to §2511(b). Moreover, Child had a strong bond and primary attachment to his foster parents. The severing of that strongly established bond would likely cause far reaching negative consequences to Child's psychological and emotional wellbeing and continued development.

Prior to filing for termination, CYF made reasonable efforts to find the Child's biological Father and investigation was also made regarding placing Child in a kinship home. The Commonwealth has an interest not only in family reunification but also in each child's right to a stable, safe and healthy environment, and the two interests must both be considered. *In re Adoption of M.E.P.*, 825 A.2d 1266 (Pa.Super. 2003). In the instant case, the evidence demonstrated that Child is in a healthy, stable environment with foster parents who are devoted to him. Remaining with those parents is in his best interest as is terminating the parental rights of his Mother, with whom he has no bond whatsoever.

## Conclusion

After a careful review of the evidence, I found that termination of Mother's parental rights best serves the needs and welfare of Child pursuant to 23 Pa. C.S.A. §2511(b) and that. Accordingly, my Orders should be affirmed.

BY THE COURT:

Date: 7/31/19

_____, J.

6