J-S14016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.P., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: B.T., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 15 WDA 2023 |

Appeal from the Order Entered November 30, 2022
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000138-2021

BEFORE: PANELLA, P.J., BENDER, P.J.E., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED: MAY 23, 2023**

B.T. (Mother) appeals from the order entered on November 30, 2022, that granted the petition filed by the Allegheny County Office of Children, Youth and Families (CYF) to involuntarily terminate Mother's parental rights to A.P. (Child), born in November of 2019, pursuant to Sections 2511(a)(2), (8) and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938.[1] After review, we affirm.

In her brief, Mother sets forth the following issue for our review:

1. Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] R.P.'s (Father) and an Unknown Father's parental rights to Child were also terminated at the same time that Mother's rights were terminated. Neither Father nor an Unknown Father appealed from the trial court's order and are not parties to this appeal.

rights would best serve the needs and welfare of the [C]hild pursuant to 23 Pa.C.S. § 2511(b)?

Mother's brief at 6.

387, 394 (Pa. Super. 2003).

We review an order terminating parental rights in accordance with the following standard:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). The burden is upon the petitioner to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid. *Id.* Moreover, we have explained that:

The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If

competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. ***In re Adoption of T.B.B.***, 835 A.2d

We have reviewed the certified record, the briefs of the parties, the applicable law, and the comprehensive opinion authored by the Honorable Eleanor L. Bush of the Court of Common Pleas of Allegheny County, Orphans' Court Division, dated January 25, 2023. Initially, we note that Judge Bush provided an extensive recitation of the history of this case, the applicable standard of review and relevant caselaw, and an analysis of the issue raised by Mother, including the facts relied upon that support the factual basis for the decision. We conclude that Judge Bush's well-reasoned opinion properly disposes of the issue raised by Mother.

Of particular note, the trial court's opinion discusses the testimony provided at the termination hearing by Dr. Beth Bliss, the expert evaluator, and a number of caseworkers who were involved with this matter over the three-year period since Child's birth. Moreover, the trial court indicated that, while Mother's substance abuse and mental health problems continued, Child was thriving in her foster home. Essentially, Mother's arguments appear to center on the court's credibility determinations, in that her discussion of the facts is contrary to that set forth by the trial court. Our standard of review prohibits this Court from overturning the trial court's credibility determinations so long as its findings are supported by the evidence of record. ***See In re M.G.***, 855 A.2d at 73-74 (stating that the trial court is free to believe all, part,

or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence).  In this case, the court's credibility determinations are supported by an overwhelming majority of the evidence.  Accordingly, we adopt Judge Bush's opinion as our own and affirm the order appealed from on that basis.

Order affirmed.

Judgment Entered.



Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/23/2023

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA
ORPHANS' COURT DIVISION

| | |
|---|---|
| IN THE INTEREST OF<br>A.P., Minor Child.<br><br><br>APPEAL OF:<br>B.T., Mother. | **CHILDREN'S FAST TRACK APPEAL**<br><br>CP-02-AP-00138-2021<br><br>15 WDA 2023<br><br>**OPINION** |

## OPINION

Bush, J.                                                                          January 25, 2023

On November 22, 2022, following a hearing in the above captioned matter on November 4, 2022, this Court issued an order terminating the parental rights of B.T. ("Mother"), R.P. ("Father"), and an Unknown Father to child, A.P. (the "Child").[1] The Court found that grounds to terminate Mother's and Father's parental rights existed pursuant to 23 Pa. C.S. § 2511(a)(2) and (a)(8). The Court found that grounds to terminate the Unknown Father's parental rights existed pursuant to 23 Pa. C.S. § 2511(a)(1) and (a)(2). The Court then concluded that terminating Parents' parental rights served the Child's needs and welfare pursuant to 23 Pa. C.S. § 2511(b). Mother filed a timely appeal in which she asserts the

---

[1] The Court's Order was docketed on November 30, 2022.

1

Court erred when it concluded that the evidence established that terminating her rights served the Child's needs and welfare.

## I.    Background

Child first came to the attention of the Allegheny County Office of Children, Youth & Families ("CYF") on November 27, 2019, following her premature birth on November 26, 2019 after which she exhibited withdrawal symptoms.[2] A CYF caseworker met with Mother in the NICU at Magee Women's Hospital where Mother acknowledged a long history of opiate addiction and various mental health diagnoses including PTSD and anxiety.[3] On December 4, 2019, CYF met with Mother and Father in their home.[4] Mother reported involvement in a methadone treatment program but disclosed that she had continued to use heroin daily until the day before Child's birth.[5] Father disclosed a criminal history including a five-year period of incarceration for a firearms violation, as well as a history of opiate addiction over the preceding year.[6]

---

[2] *See* Joint Exhibit A: Mother's Stipulations ¶¶ 4-5.

[3] Id. at ¶ 7.

[4] *See* Joint Exhibit A: Mother's Stipulations ¶ 8; *see also* Joint Exhibit B: Father's Stipulations ¶ 3.

[5] *See* Joint Exhibit A: Mother's Stipulations ¶ 8; *see also* Tr. November 4, 2022 at 68:7-11.

[6] *See* Joint Exhibit B: Father's Stipulations ¶ 3; *see also* Tr. November 4, 2022 at 69-70.

Prior to Child's discharge from the hospital, CYF obtained an emergency custody authorization ("ECA") on December 10, 2019 and placed Child in foster care on December 13, 2019, where she has remained.[7] Child was adjudicated dependent on January 29, 2020.[8] At the time of adjudication, drug and alcohol treatment for both Parents was identified as the primary issue to be addressed.[9]

During the termination hearing on November 4, 2022, the Court heard testimony from expert evaluator Dr. Beth Bliss, Arsenal ACT Program coordinator Tina Sevin, CYF Casework Supervisor Allison Kroll, Pressley Ridge treatment coordinator Meghan Brooks, CYF Permanency Caseworker Renee Taddy, maternal grandfather W.T., and Mother. The Court admitted the following exhibits into the record:

Joint A: Mother's Stipulations;

Joint B: Father's Stipulations;

CYF 1: Dependency Court Orders;

CYF 2: CYF Family Service Plans;

CYF 3: PFAs;

---

[7] *See* Order for Emergency Protective Custody, December 10, 2019; *see also* Joint Exhibit A: Mother's Stipulations ¶¶ 9-10.

[8] *See* Order of Adjudication and Disposition, January 29, 2020; *see also* Joint Exhibit A: Mother's Stipulations ¶ 14.

[9] *Id.*

3

CYF 4: Parents' Urine Screen Results;

CYF 5: Forensic Evaluations;

CYF 6: Certified Criminal Records for Mother;

CYF 7: Certified Criminal Records for Father;

Mother's A: Facebook posts;

Mother's B: Home videos.

The evidence at the hearing showed that Mother has not successfully addressed the needs identified over the life of the case. At the time of Child's birth, Mother had struggled with drug addiction for almost ten years and was in a methadone treatment program.[10] However, Mother discontinued this treatment in the fall of 2020.[11] Since that time, Mother has never provided any documentation confirming attendance at or completion of a drug treatment program.[12] Mother has additionally failed to attend a urine screen since January 2020.[13] During her January 2022 evaluation with Dr. Bliss, Mother admitted to use of illicit substances approximately one to two months prior.[14] Most recently, during the November 4,

---

[10] *See* Joint Exhibit A: Mother's Stipulations ¶¶ 6-8.

[11] Tr. November 4, 2022 at 84:8-12.

[12] *Id.* at 86:4-7, 155-56.

[13] *Id.* at 86-87.

[14] *Id.* at 9:10-18.

4

2022 hearing, Mother candidly admitted to use of illicit substances for the preceding month.[15]

In addition to Mother's failure to establish recovery from substance abuse, Mother also failed to attend an intimate partner violence program recommended after concerns arose regarding criminal charges against Father where Mother was the identified victim.[16] Mother continues to reside with Father and concerns about intimate partner violence have not been alleviated.[17] Mother's lack of progress toward any of the established goals persisted through the duration of the case. Indeed, at the hearing, Mother did not assert an ability to assume care of Child and described herself as not the "fittest" mother in her current condition.[18]

While Mother has continued to struggle, Child has thrived in her foster home. Foster parents and siblings are attentive to Child's needs, and she has developed a close bond with them.[19] Child often shows spontaneous signs of affection toward her foster parents and has developed a secure attachment to foster mother, whom she views as her psychological parent.[20] Though Child may

---

[15] *Id.* at 17:11-14.

[16] *Id.* at 87-89.

[17] *Id.* at 89-90.

[18] *Id.* at 227-228.

[19] *Id.* at 45-46.

[20] *Id.* at 140:18-20, 42:11-12.

experience an adjustment period from the loss of ongoing visits with Parents and maternal grandfather, foster parents are well equipped to remedy any emotional loss.[21]

It was against this background that this Court determined to terminate Mother's parental rights pursuant to 23 Pa. C.S. § 2511(a)(2) and (a)(8).

## II. Issues on Appeal

In her Concise Statement of Matters Complained of on Appeal, Mother asserts the following challenge to this Court's Order of November 22, 2022:

1. The trial court abused its discretion and/or erred as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the child pursuant to 23 Pa. C.S. § 2511(b).[22]

## III. Discussion

To terminate parental rights, a trial court must first find clear and convincing evidence that grounds for termination exist under one of the eleven subsections of 23 Pa. C.S. §2511(a). If grounds exist, the court must then consider, under 23 Pa. C.S. §2511(b), whether termination would best serve the child's developmental,

---

[21] *Id.* at 26-27.

[22] *See* Concise Statement of Matters Complained of on Appeal, December 28, 2022.

6

physical and emotional needs and welfare.[23] On review, the Superior Court must affirm if it finds that competent evidence supports the trial court's decision.[24]

On appeal, Mother does not contest that grounds existed to terminate her parental rights. She only contests the Court's conclusion that termination of her parental rights meets the needs and welfare of her Child. Because Mother does not contest that grounds exist for termination, the reviewing court need only consider whether this Court's decision that termination best serves the Child's developmental, physical, and emotional needs and welfare was supported by competent evidence.[25]

## A. The Evidence Established that Terminating Mother's Rights Meets Child's Needs and Welfare.

As discussed in *In re N.A.M.*,[26] the inquiry into whether terminating a parent's rights serves the child's needs and welfare necessarily includes inquiry into the nature and status of any bond between the parent and child and the effect on the child of severing that bond, if it exists:

---

[23] *See In re J.F.M.*, 71 A.3d 989 (Pa. Super. 2013) (discussing two-step analysis by which the court must first find that grounds to terminate exist under 23 Pa. C.S. § 2511(a) before addressing child's needs and welfare under 23 Pa. C.S. § 2511(b)).

[24] "If the findings of the trial court are supported by competent evidence, we will affirm even if the record could also support the opposite result." *Id.* at 992 (citing *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003)).

[25] *Id.*

[26] 33 A.3d 95 (Pa. Super. 2011).

7

However, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *In re K.Z.S.,* 946 A.2d 753, 763 (Pa. Super. 2008).

While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child. *In re K.K.R.-S.,* 958 A.2d 529, 533–536 (Pa. Super. 2008). The mere existence of an emotional bond does not preclude the termination of parental rights. *See In re T.D.,* 949 A.2d 910 (Pa. Super. 2008) (trial court's decision to terminate parents' parental rights was affirmed where court balanced strong emotional bond against parents' inability to serve needs of child). Rather, the orphans' court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship. *In re Adoption of T.B.B.,* 835 A.2d 387, 397 (Pa. Super.2003)."[27]

In this matter, the evidence amply supported the Court's conclusion that termination of Mother's parental rights served the Child's needs and welfare. Child was removed from Mother's care at birth. Following multiple interactional evaluations with different individuals, Dr. Bliss opined that Child has a strong, secure attachment and significant bond to her foster family and views foster mother as her psychological parent.[28] Although, Dr. Bliss observed that Child is comfortable with Mother and displayed "some level of attachment" during their interactions, Dr. Bliss did not find this relationship to be a necessary one.[29] Dr.

---

[27] *In re N.A.M,* 33 A.3d at 103.

[28] Tr. November 4, 2022 at 24:8-11.

[29] *Id.* at 17:14-18.

Bliss expressed concerns with Mother's ongoing drug and alcohol issues interfering with her capacity to parent as Mother has not shown a lengthy period of sobriety over of the life of the case nor received an adequate level of treatment.[30] Indeed, Mother admitted to using illicit substances as recently as one to two months prior to the January 2022 evaluation with Dr. Bliss.[31] While Dr. Bliss acknowledged that Child would have a period of adjustment should parental rights be terminated, she ultimately opined that termination would not have any negative effect on her and that her foster parents would be able to remedy any negative adjustment.[32] In fact, Dr. Bliss opined that Child's removal from her foster family would be negative for her psychological well-being.[33] Dr. Bliss's testimony and evaluation results fully support the Court's conclusion that termination of Mother's parental rights serves Child's needs and welfare.

Child is now three years old and has resided with foster parents since her discharge from the hospital.[34] Given Mother's ongoing and lengthy struggle with substance abuse, lack of progress or adequate treatment, Child's length of time in

---

[30] *Id.* at 8-9.

[31] *Id.* at 9:13-18.

[32] *Id.* at 24-26

[33] *Id.* at 24:12-15.

[34] At the time of the November 4, 2022 and November 22, 2022 hearings, Child was two years old. Child has since turned three years old on November 26, 2022.

placement and her bond with her foster family, the Court justifiably concluded that Child's need for safety, permanency and stability outweighs the possible benefit to Child of maintaining her relationship with Mother.

## IV. CONCLUSION

For the foregoing reasons the Superior Court should dismiss Mother's appeal and affirm this Court's order of November 22, 2022.

By the Court:

_Eleanor L. Bush_ ,

The Honorable Eleanor L. Bush

10