J-S33004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.M.S., III, FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 840 MDA 2024 |

Appeal from the Order Entered May 30, 2024
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-DP-0000039-2023

BEFORE: OLSON, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY OLSON, J.:                    **FILED: SEPTEMBER 24, 2024**

Appellant, J.M.S., III, ("Father") appeals the May 30, 2024 order granting the petition filed by York County Office of Children, Youth and Families ("the Agency") to change the permanency goal for his child, A.M. ("the Child"), from reunification to adoption.[1]  We affirm.

"On January 25, 2023, the Agency received a referral regarding the [C]hild[] due to allegations of parental substance abuse and inadequate healthcare [for] the [C]hild and her half-siblings." Trial Court Opinion, 7/3/24, at 2 (footnote omitted).  On February 8, 2023, the Child was adjudicated dependent with the goals of reunification.  Initially, Mother identified "Jonathan Stump," located in Dauphin County, as Child's Father.  As such, "[n]otice of the proceedings was published on March 17, 2023, to 'Jonathan

---

[1] N.M.'s ("Mother") rights were terminated on April 29, 2024.  Mother did not file an appeal.

Stump,' and included [C]hild's name and date of birth." *Id.* A "Jonathan Stump" was subsequently contacted but was later determined not to be the Child's father. On April 24, 2024, Mother identified J.M.S., III, who is currently incarcerated, as Child's father. Thereafter, the trial court conducted a permanency review hearing on May, 22, 2024. Father did not attend the hearing, but was represented by counsel. At the hearing, the trial court learned that Father had no previous contact with the Child and was currently serving a sentence of six to 12 years' incarceration. On May 30, 2024, the trial court "changed the primary goal from reunification to adoption and made the concurrent goal placement with a legal custodian." *Id.* at 3. This timely appeal followed.

Father raises the following issue on appeal:

Did the [trial c]ourt abuse its discretion, exercise a manifestly unreasonable judgment and err as a matter of law in changing the goal from reunification with a parent to adoption as the Agency failed to meet its burden based upon the evidence and testimony presented?

Father's Brief at 4.

Herein, Father argues that the trial court committed an abuse of discretion in ordering a placement goal change to adoption on May 30, 2024, even though he allegedly first learned about the Child's existence "sometime between April 29[, 2024] and May 6, 2024." *Id.* at 15. Father claims that the trial court made "no effort to engage [Father] or his family" and to pursue

reunification but, instead, "rush[ed] to a desired conclusion" of adoption. ***Id.*** at 17.

Our standard of review is as follows:

> When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion. ***In re G.P.-R.***, 851 A.2d 967, 973 (Pa. Super. 2004). In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was "manifestly unreasonable," that the court did not apply the law, or that the court's action was "a result of partiality, prejudice, bias or ill will," as shown by the record. ***Id.*** (citation omitted). We are bound by the trial court's findings of fact that have support in the record. ***Id.*** The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. ***In re Adoption of R.J.S.***, 901 A.2d 502, 506 (Pa. Super. 2006). When the trial court's findings are supported by competent evidence of record, we will affirm "even if the record could also support an opposite result." ***Id.***[,*quoting*] ***In the Interest of S.H.***, 879 A.2d 802, 806 (Pa. Super. 2005), *appeal denied*, 892 A.2d 824 (Pa. 2005[]).

***In re N.C.***, 909 A.2d 818, 822–823 (Pa. Super. 2006) (parallel citation omitted).

This Court previously stated:

> It is well settled that the focus of all dependency proceedings, including goal change proceedings, is on the safety, permanency, and well-being of the child and the best interests of the child must take precedence over all other considerations. ***In re A.K.***, 936 A.2d 528, 534 (Pa. Super. 2007). At each dependency review hearing, the trial court must consider, *inter alia*, the continuing necessity for and appropriateness of the Child's placement, and the appropriateness and feasibility of the current placement goal for the child. 42 Pa.C.S. § 6351(f)(1), (4). If reunification with the child's parent is not in a child's

best interest, the court may determine that [a]doption is the appropriate permanency goal. **See** 42 Pa.C.S. § 6351(f.1)(2). "When the child welfare agency has made reasonable efforts to return a foster child to his or her biological parent, but those efforts have failed, then the agency must redirect its efforts towards placing the child in an adoptive home." **In re N.C.**, **supra**, at 823 (citation omitted). "This Court has held that the placement process should be completed within 18 months." **Id.** "A child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." **In re Adoption of M.E.P.**, 825 A.2d 1266, 1276 (Pa. Super. 2003) (citation omitted).

"A placement goal change to [a]doption does not terminate the parents' rights; however, it is a step in that direction." **In re N.C.**, **supra** at 824 (citation omitted). Ultimately, at a termination of parental rights hearing, a trial court must determine whether terminating parental rights is in a child's best interest, "with utmost attention to the effect on the child of permanently severing [the parent-child] bond." **In re N.A.M.**, 33 A.3d 95, 103 (Pa. Super. 2011). Adoption may not be an appropriate permanency goal if severing an existent parent-child bond would have a detrimental effect on a child. **See id.**

**Int. of H.J.**, 206 A.3d 22, 25 (Pa. Super. 2019).

In its 1925(a) opinion, the trial court initially recognized that, "[a]t the time of the [May 22, 2024] hearing, the [C]hild had been under the care of the Agency for "approximately [15] months and [25] days." Trial Court Opinion, 7/3/24, at 4. Then, the trial court discussed Father's incarceration status, noting that

[Father previously] pled guilty in four different criminal dockets on March 2, 2022. In total, [Father] was sentenced to six to [12] years' of incarceration. [Father] has served five years, and would realize an earliest release by the beginning of 2025, and 2031 at the latest. At best, the [C]hild could be reunified with [Father] next year, if he can establish a relationship with [her], secure stable housing sufficient for the [C]hild, and evidence

effective parenting skills. However, the [C]hild is nearly seven years old, having no contact with [Father] over her lifetime, meaning that if [Father] served his entire [12]-year sentence, the [C]hild would no longer be subject to the jurisdiction of the dependency court, and reunification would be unattainable.

*Id.* at 4-5. The trial court also rejected Father's contention that he was unaware of the Child's existence before May 2024 and stated as follows:

[Father] knew that the [C]hild existed and that he may be her father prior to [May 1, 2024] but made no effort to have contact with her. The [C]hild's name, which was known to [Father] and birthdate were in the published notice from March of 2023, when the [C]hild was five years old, putting any putative father on notice that the [C]hild was in the care of the agency. Prior to that, despite family and friends advising him of the existence of the [C]hild, [Father] has not had any contact with [her] since birth.

*Id.* at 7. Finally, the trial court reviewed the Child's progress in her pre-adoptive placement, opining that the Child is "thriving" and has "a strong bond with her foster mother" to the extent that she "recognize[s] her foster mother as a parental figure[] and her foster mother is dedicated to her continuing care." *Id.* at 6-7. Based upon the foregoing, the trial court determined that changing the Child's permanency goal to adoption "best suited [the Child's] safety, protection and physical, mental and moral welfare." *Id.* at 6. Our review of the record confirms the trial court's findings. We therefore discern no abuse of discretion and affirm the trial court's order changing the permanency goal to adoption.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 9/24/2024