J-S14017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF THE INVOLUNTARY TERMINATION OF PARENTAL RIGHTS TO J.W.D., A MINOR | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.L.D., MOTHER | : : : | |
| | : | No. 108 WDA 2023 |

Appeal from the Decree Entered December 27, 2022
In the Court of Common Pleas of Venango County Orphans' Court at
No(s): O.C.D. No. 130-2020

| | | |
|---|---|---|
| IN THE MATTER OF THE INVOLUNTARY TERMINATION OF PARENTAL RIGHTS TO A.J.D., A MINOR | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.L.D., MOTHER | : : : | |
| | : | No. 109 WDA 2023 |

Appeal from the Decree Entered December 27, 2022
In the Court of Common Pleas of Venango County Orphans' Court at
No(s): O.C.D. No. 129-2020

BEFORE: PANELLA, P.J., BENDER, P.J.E., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED: MAY 30, 2023**

C.L.D. ("Mother") appeals from the decrees entered on December 27,

2022, that granted the petitions filed by Venango County Children and Youth

Services ("CYF" or "Agency") to involuntarily terminate Mother's parental

_____

[*] Retired Senior Judge assigned to the Superior Court.

rights to J.W.D., born in September of 2018, and A.J.D., born in October of 2017, (collectively "Children"), pursuant to Sections 2511(a)(1), (2) and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938.[1] Following review, we affirm.[2]

In her brief, Mother lists the following two issues for our review:

1.  Did the trial court err as a matter of law or abuse its discretion when it granted CYF's petition to involuntarily terminate Mother's parental rights absent clear and convincing evidence that the Child[ren] [were] removed from the care of the Mother by the court for at least six months and the conditions which led to the Child[ren]'s removal continue to exist and that the Mother cannot or will not remedy those conditions within a reasonable period of time and the services and assistance reasonably available to Mother are not likely to remedy the conditions which led to the removal of the Child[ren] within a reasonable period of time?

2. Did the trial court err as a matter of law or abuse its discretion in determining that terminating [Mother's] parental rights was in the best interest of the Child[ren] despite being against the weight of the evidence presented?

Mother's brief at 8.

We review a decree terminating parental rights in accordance with the following standard:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the

_____

[1] K.E.D.'s ("Father") parental rights to Children were voluntarily terminated by decrees, dated November 12, 2021, and entered on November 15, 2021. Father is not a party to the present appeals.

[2] Because these matters involve related parties and issues, this Court consolidated these two appeals by order entered on February 14, 2023. *See* Pa.R.A.P. 513.

decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). The burden is upon the petitioner to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid. *Id.* Moreover, we have explained that:

The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

We have reviewed the certified record, the briefs of the parties, the applicable law, and the comprehensive opinion authored by the Honorable Edward D. Reibman, Senior Judge of the Court of Common Pleas of Venango

County, filed on December 27, 2022. We conclude that Judge Reibman's well-reasoned opinion properly disposes of the issues raised by Mother. Specifically, the trial court's opinion extensively discusses the facts provided at the various hearings held in this matter. Essentially, Mother's arguments center on the credibility determinations made by the court, contending that her testimony should have been believed rather than the testimony provided by the Agency's witnesses. In other words, she avers that if the court had believed her testimony, it would have concluded that her substance abuse, housing, and mental health issues, have not continued so that the Children could have been returned to her care, which would have been in their best interests. Our standard of review prohibits this Court from overturning the trial court's credibility determinations so long as its findings are supported by the evidence of record. *See In re M.G.*, 855 A.2d at 73-74 (stating that the trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence). Our review reveals that the court's credibility determinations are supported by the overwhelming majority of the evidence. Therefore, we adopt Judge Reibman's opinion as our own and affirm the decrees appealed from on that basis.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/30/2023

S14017-23

# IN THE COURT OF COMMON PLEAS OF ENANGO COUNTY, PENNSYLVANIA ORPHANS' COURT DIVISION

**IN THE MATTER OF THE INVOLUNTARY TERMINATION OF PARENTAL RIGHTS TO** ~~████ ██████ ████████~~, a minor child  *A.J.D.*

**O.C.D. No.: 129-2020**

---

**IN THE MATTER OF THE INVOLUNTARY TERMINATION OF PARENTAL RIGHTS TO** ~~████ █████ ████████~~, a minor child  *J.W.D.*

**O.C.D. No.: 130-2020**

---

## MEMORANDUM OPINION

Before the court are the Petitions for Involuntary Relinquishment of Parental Rights, filed on November 25, 2020, by Venango County Children and Youth Services ("Agency") seeking to terminate the parental rights of ~~████~~ *C.L.D.* ~~████~~ ("Mother") to two of her children, ~~████ ██████~~ *A.J.D.* ~~████~~ (~~████~~ "A.J.D."), born October 17, 2017, 5 years of age, and ~~████~~ *J.W.D.* ~~████~~ (~~████~~ "J.W.D."), born September 13, 2018, 4 years of age, (together, "the children").  Trial thereon was held on November 18, 2022, attended by William J. Cisek, Esquire, on behalf of the Agency; ~~████~~ *A.J.D.*, with

1

her attorney, Virginia G. Sharp, Esquire, who also represented ████[1] *J.W.D.*; and

Mother, with her attorney, Diane Hasek, Esquire.

### Facts[2]

The children were removed from Mother's custody on November 9, 2018. However, the Agency had been involved with Mother since October 11, 2016, when it indicated she was involved with photographing, videotaping, depicting on a computer or filming sexual acts of the children's eight-year-old sister. In all, Mother has eleven children. She has custody of none of them. Her history with the agency has included substance abuse, inadequate housing, inadequate medical care and/or treatment regarding her children, allegations of sexual abuse, allegations of physical abuse and mental health concerns.

She tested positive at ████ *J.W.D.'s* birth on September 13, 2018, for Subutex. She described her relationship with the children's father as volatile. The Agency attempted to gain access to the home and see the children sixteen times between September 24 and November 7, 2018, to ensure their safety.

---

[1] Attorney Sharp had been the children's Guardian ad Litem in the dependency proceedings. She did not believe it was a conflict to represent the children during the termination hearing. All parties concurred with that assessment.

████ *A.J.D.* was interviewed in the presence of counsel; Mother waived her right to be present. *J.W.D.* ████ did not attend the hearing; he was home with a viral infection.

[2] The Court takes judicial notice of the Orders of Court pertaining to the dependency proceedings involving the children at docket number DP 65-2018 for ████ and 66-2018 for ████ *A.J.D.* *J.W.D.*

Each time the parents failed to be present or failed to allow the Agency access to the home or to the children.

The Agency's caseworkers returned to the children's home on November 9, 2018, upon being notified that the police were investigating the existence of a possible methamphetamine lab at their home. The home appeared to be a pole barn built on an unheated concrete slab that was serving as a residence. It consisted of a kitchen, bathroom, living room and two bedrooms. It was "an extreme mess." It had no running water. Trash and rubbish, some piled up two to three feet high, and about 20 jugs of what appeared to be and smelled like urine were inside and outside of the building. It was heated by a series of electric space heaters. Paper and lighter fluid were stored near them. Plastic sheets separated rooms. The parents had a bed in one of the bedrooms; there was no bed, only storage, in the other bedroom. The children were in a bassinette. Rodent feces was on the floor and beneath a cabinet below the kitchen sink. Black mold was also under the sink. The house had poor ventilation and smelled of dampness. A syringe was found outside of the house. Poor drainage on the property caused water to puddle at the door. The front door was covered with mud. Plywood leading to the porch was unsafe. The conditions were deplorable. The house was not a safe place for the children to live.

The Agency removed the children from their home on November 9, 2018. A.J.D. ▓▓▓▓, who was one year old, had an untreated herniated umbilical and superficial scratches on her from her long nails. J.W.D. ▓▓, who was 2 months old, had pressure ulcers on both of his feet from not being moved around enough and lying in one position. The children were filty from head to toe. Dirt was embedded under their nails. Each of the children had significant diaper rash on their private areas.

The Agency removed the children from their home and placed them in the care of their maternal grandmother. It filed dependency petitions for the children on November 13, 2018, alleging they were without proper care or control. Mother was subsequently charged with two counts of a parent endangering the welfare of the children. 18 P.S.A. § 4304(A)(1). She was arrested and incarcerated in the Venango County Jail on December 8, 2018. The children were removed from their maternal grandmother's care on December 12, 2018, and placed in the kinship home of Mother's first cousin, M.S. "M.S." M.S. ▓▓▓▓▓ (▓▓▓▓▓). ▓▓▓▓▓ resides in Oil City, Venango County, with her partner of twenty years, A.N. "A.N." ▓▓▓▓ ▓▓▓ (▓▓▓▓). The children have M.S. A.N. remained with ▓▓▓▓▓ and ▓▓▓▓ since that time.

D.W.D. ▓▓▓ was declared dependent on January 11, 2019; he was three months A.J.D. old. ▓▓▓▓▓ was declared dependent on January 18, 2019; she was fourteen months old.

4

Mother was sentenced on May 19, 2019, to 18 to 48 months in prison. She was incarcerated in the Venango County Jail from December 8, 2018, until June 10, 2019, when she was transferred to SCI Muncy. Due to the nature of the charges, she was not permitted to have visitation with the children. The permanency plan goal for the children was changed on July 20, 2020, to "adoption" due to Mother's inability to meet the goals of her service plan. She had not obtained stable housing and had done nothing regarding her mental health.

She was transferred to SCI Cambridge Springs on July 28, 2020. The Agency filed its petitions for involuntary termination of her parental rights on November 25, 2020. Hearings were scheduled for April 8 and 9, 2021, but were continued.

Mother was paroled on June 1, 2021. Her conditions of supervision included that she have no visitation with the children.

The parental rights of the children's natural father, ███ K.E.D. ███ ███████, were terminated voluntarily by decree dated November 12, and filed on November 15, 2021.

Mother enrolled in drug and alcohol counseling, but missed sessions on December 1 and 8, 2021. She was unsuccessfully discharged from the Effective Safe Parenting Program on December 17, 2021, because she did not make progress while in the program and declined assistance with finding

stable housing, employment, transportation and addressing medical and dental needs.

She moved to a one-bedroom camper on her father's property in Polk, Venango County, on July 7, 2022. The camper has no water. Electricity is provided through an extension cord from another source. She resides there with ▮▮ ▮▮ ▮▮▮ J.J.M., her fiancé since July 2021. She sleeps on a couch. There is no room for the children, and she acknowledged it is not an appropriate place for the children to live.

She tested positive for methamphetamine, amphetamine and THC on July 8, 2022. She refused to take a drug test on August 11, 2022, but admitted to recent methamphetamine use. She tested positive on September 7, 2022, and again admitted to methamphetamine use. She went to an in-patient facility the next day and tested negative on October 26 and again on November 17, 2022, the day before trial.

She said she completed two programs while at SCI Muncy, but did not have the certificates to prove it. She completed programs on parenting, alcohol and drugs, healthy living, positive relationships, staying on track and re-entry, and participated in educational programs related to the building trades and being a flagger while at SCI Cambridge Springs. Deft.'s Exs. D and E, 11/18/22. She said she participated in those programs because she wanted the children to be returned to her custody.

6

She claimed the Agency's caseworker would not tell her what she had to do to get the children back. She provided proof that she mailed something to the caseworker from SCI Cambridge Springs on October 5, 2020. Deft.'s Ex. A, 11/18/22. She also provided proof that she mailed something to M.S. from SCI Cambridge Springs on October 5 and November 20, 2020. *Id.* Mother testified she sent paper to the children to color.

Mother is on probation; her supervision is scheduled to end in May 2024. Her conditions of supervision include that she undergo a drug and alcohol assessment and a mental health evaluation, and follow through with any recommended treatment; comply with a curfew; and have no contact with any minor children unless accompanied by another adult. She was ordered to undergo mental health counseling in June 2021 and reminded to do so again on July 8, 2022. She has failed to do so.

She has been unemployed since, at least, March 2022. She testified her fiancé, J.J.M., has a net income of $910.00 a week as a welder in Youngstown, Ohio, but he was not present at the trial and Mother presented no documents to substantiate her testimony. She also testified she has been approved for a $200,000 loan to buy a house, but her car broke down and she had to spend $37,000 for a used car. She provided no corroborating evidence to support those claims.

Permanency Review Hearings were held on March 22 and September 13, 2019; February 24, July 20 and October 19, 2020; February 12 and

October 15, 2021; and March 28 and September 28, 2022, and the Agency has continuously offered services to help Mother alleviate dependency. Mother has not followed through with appointments with service providers and has not alleviated all of the conditions that have led to the dependency.

Specifically, the Agency has instructed Mother to obtain a mental health evaluation and follow through with any recommendations and has made housing referrals and provided housing applications to Mother, but she has failed to follow through with them. Although at trial she asked for "a few months" to get her children back, there is no basis, given her history, upon which to conclude she will meet those conditions.

## Conclusions of Law

The grounds for involuntary termination are set forth at 23 Pa. C.S.A § 2511 (a) and (b), which, in pertinent part, provide:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

8

> **(b)  Other considerations.—** The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

Application of § 2511 requires a bifurcated analysis.  Initially, the focus is on the parent.  The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in § 2511 (a). Only if the court determines the parent's conduct warrants termination of his/her parental rights does the court engage in determining the needs and welfare of the child under the standard of the best interests of the child.  § 2511 (b).  *See, In re S.C.*, 247 A.3d 1097, 1103 (Pa.Super. 2021).  In applying the facts to the law, one must be mindful that

> ... [a] child has a right to a stable, safe, and healthy environment in which to grow, and the child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

*Id.*

The petition to terminate Mother's parental rights was filed on November 25, 2020. She had been incarcerated since December 8, 2018, nearly twenty-two months immediately preceding the filing of the petition. She was convicted of endangering the welfare of the children. Due to the nature of the offense, she was not permitted to have visitation with them. She has failed to perform parental duties during that time.

The court removed the children from Mother's care on November 9, 2018. Although Mother has taken advantage of various programs and courses while in state prison and attended an in-patient substance abuse program, she has remained drug-free only since August 11 2022. Moreover, she has failed to follow through with a mental health evaluation required of her since June 2021 and, most importantly, she has failed to alleviate the conditions which led to the removal or placement of the children in the first place, i.e. obtain appropriate housing for the children.

The Agency has established by clear and convincing evidence that the developmental, physical and emotional needs and welfare of ██████ A.J.D. and ████ J.W.D. are best met by involuntarily terminating Mother's parental rights to them as required by 23 Pa. C.S.A. § 2511(b).

██████ M.S. is employed by the Venango County Assessment Office. ████ A.N. is not employed; he is disabled due to seizure disorder and anxiety issues which are controlled by medication. They provide a safe and clean home for the children and meet their medical and educational needs. Specifically, the

10

children go to Headstart; **A.J.D.** ▮ has some speech delay, anger issues and pre-puberty concerns that are being tended to by health care professionals and therapists; and **J.W.D.** ▮, who was ten pounds underweight when he came to them, is now an appropriate 35 pounds. The children call **M.S.** ▮ "Mom" or "Mommy Mary" and **A.N.** ▮ "Dad" or "Daddy Art." **M.S.** ▮ and **A.N.** ▮ love the children, and the children are thriving in their care. They are an appropriate adoptive resource for the children.

It is not a question of Mother's willingness or ability to remedy the conditions that led to the child's placement if the conditions continue to exist. *S.C., supra,* at 1105. Even if Mother made progress in remedying the conditions that led to placement and could potentially parent the child successfully in the future, termination is justified if the conditions continue to exist after 12 months in placement and it would serve the needs and welfare of the child. *In re S.H.,* 879 A.2d 802, 806-07 (Pa.Super. 2005).

For a period of at least six (6) months immediately preceding the filing of the Petition, Mother has either evidenced a settled purpose of relinquishing her parental claim to the children or has refused or failed to perform parental duties as required in 23 Pa. C.S.A. § 2511(a)(1) and has evidenced a repeated and continued incapacity that has left the children without essential parental care, control or subsistence necessary for their physical and mental well-being as required by 23 Pa. C.S.A. § 2511 (a)(2). Finally, the developmental, physical and emotional needs and welfare of the children are best met by

11

involuntarily terminating Mother's parental rights to the children.  Accordingly, decrees were entered terminating the parental rights of ~~████~~ ~~████~~ C. L. D. ~~████████~~ to her children, ~~████ ████ ████████~~i A. J. D. and ~~████ ████~~ ~~████████~~. J. W. D.

BY THE COURT:

December 27, 2022

_____
Edward D. Reibman, Senior Judge

CC:    Virginia G. Sharp, Esquire
       William J. Cisek, Esquire
       Diane Hasek, Esquire
       Venango County Children, Youth and Family Services

12